Lynn A. Neils (Admitted *Pro Hac Vice*)
lynn.neils@bakerbotts.com
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-2510
Facsimile: (212) 259-2510

Attorney for Entertainer and Manager

Joel C. Koury (State Bar No. 143856)
jckoury@aol.com
Law Offices of Joel C. Koury
3435 Ocean Park Blvd., Suite 107-50
Santa Monica, CA 90405
Telephone: (424) 248-8670
Facsimile: (855) 828-0871

Attorney for Entertainer and Manager

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>BENJAMIN KOZIOL,<br><br>    Defendant. | Case No.: CR 18-00022-CAS<br><br>**DECLARATION OF LYNN A. NEILS IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENAS** |

I, Lynn A. Neils, declare:

1.   I am a partner at the law firm of Baker Botts L.L.P. and licensed to practice law in the State of New York. I am the Attorney for Entertainer and Manager, the victims of the extortion scheme charged in the above-referenced case (collectively "the Victims"). I have personal knowledge of the facts set forth in this declaration. I submit this declaration in support of the accompanying motion to quash or modify (1) the trial subpoena issued by the defense and served on Lynn A. Neils on May 16, 2018 (the "Trial Subpoena") and (2) the early return subpoenas

issued by the defense pursuant to this Court's May 18, 2018 Order (collectively, the "Early Return Subpoenas"):

a. The subpoena to Entertainer, dated May 9, 2018 (calling for testimony and the production of contracts and retainer agreements);

b. The subpoena to Manager, dated May 9, 2018 (calling for testimony and the production of contracts and retainer agreements);

c. The subpoena to Lynn A. Neils, dated May 9, 2018 (calling for testimony and the production of contracts and retainer agreements);

d. The subpoena to Joseph Perry, dated May 9, 2018 (calling for testimony and the production of contracts and retainer agreements); and

e. The subpoena to J. Reid Hunter, dated May 9, 2018 (calling for testimony and the production of contracts and retainer agreements).

The Trial Subpoena and the Early Return Subpoenas are collectively referred to as the "Subpoenas" in this declaration.

2. The discovery sought by the Subpoenas is overbroad, is unlikely to lead to any admissible or relevant evidence and will not aid the jury in determining whether the defendant attempted to extort the Entertainer.

3. In anticipation that the defense may issue, or seek permission from the Court to issue, the Subpoenas, I submitted a May 9, 2018 letter to Your Honor, which was subsequently attached to a Notice Regarding Victims' Letter filed by the Government on the same day. I have attached the Government's Notice and my attached letter hereto as Exhibit A. In that letter, I specifically objected to, *inter alia*, the defense's likely request to obtain (1) copies of the operative contracts between the Entertainer and the Manager and (2) copies of the retainer agreements between the Entertainer and/or the Manager and their lawyers, including the retainer agreement with my firm and that of J. Reid Hunter. I also requested an opportunity to be heard, as required by Rule 17(c)(3), if such an application for a

subpoena to obtain those records were made, on the grounds that those records contained personal and confidential information about a victim, were irrelevant to the issues in the case, and disclosure of those records to defense counsel could be highly prejudicial to the Victims.

4. On or around the time that I filed my May 9, 2018 letter with the Court, it appears that the defense submitted an *ex parte* application requesting an order from this Court for the issuance of the Early Return Subpoenas. The Court subsequently granted the defense's application for the issuance of subpoenas on May 18, 2018 ("the Court's May 18 Order").

5. The Court authorized the issuance of the Early Return Subpoenas to the following eight parties: (1) Entertainer; (2) Manager; (3) Lynn A. Neils; (4) Joseph Perry; (5) J. Reid Hunter; (6) Patricia Glaser; (7) Kerry Garvis Wright; and (8) Gary Stiffelman.

6. The Early Return Subpoenas direct the eight different subpoenaed parties to appear to testify and demand the production of the same categories of documents by May 23, 2018:

    a. Copies of all contractual agreements between Manager and Entertainer operative at any time between December 1, 2015 and January 19, 2018;

    b. Copies of all retainer agreements between Manager and Entertainer and their counsel, including Lynn A. Neils, Kerry Garvis Wright, J. Reid Hunter, Joseph Perry, Patricia Glaser, and Gary Stiffelman, in connection to matters involving Jordan Sweet and Benjamin Koziol.

7. On May 18, 2018, I received an email from the defendant's counsel, attaching a copy of the Court's May 18 Order and attaching the Early Return Subpoenas issued to me, Entertainer and Manager. I agreed to accept service of the Early Return Subpoenas on behalf of myself, the Entertainer and the Manager. On

May 21, 2018, my colleague, Joseph Perry, was served with the Early Return Subpoena at our offices in New York City. J. Reid Hunter informed me that he was also served with the Early Return Subpoena.

8. Although the Court's May 18 Order prohibited counsel for the Entertainer and Manager from notifying the Government of the Early Return Subpoenas, based on my conversations with Ann Kim, one of the Assistant U.S. Attorneys ("AUSAs") handling this matter, the Government was already aware of the Early Return Subpoenas. Ms. Kim informed me that during the pre-trial conference held before the Court on May 18, 2018—at which I was not present—the Court disclosed generally to the Government that it had authorized the issuance of the Early Return Subpoenas. I have not, however, had any conversation with the AUSAs regarding, or notified them, about the Early Return Subpoenas.

9. The AUSAs are nonetheless aware that I have been subpoenaed in connection with this case. On May 16, 2018—two days *prior* to the Court's May 18 Order—the defense served me with the Trial Subpoena, as I was exiting Your Honor's courtroom after a Pretrial Conference in this case. The AUSAs were exiting Your Honor's courtroom at the same time and were present when I was served with the Trial Subpoena. I have attached a copy of the Trial Subpoena as Exhibit B hereto.

10. The Trial Subpoena served on me is different than the Early Return Subpoena, authorized by the Court, in one significant respect; it demands the production of an additional, and large, category of documents that was not included in the Early Return Subpoena to me that was authorized by the Court, namely "[c]opies of *all* electronic communications between me and the United States Attorney's Office from October 1, 2017 until present."

11. I submit this declaration and the accompanying memorandum of law to: object to, and request that the Court quash or modify the Subpoenas and request, at a minimum, a hearing to allow counsel for the Victims to be heard regarding the

1  propriety of the Subpoenas. The discovery sought in the Subpoenas is overbroad, is
2  unlikely to lead to any admissible or relevant evidence and will not aid the jury in
3  determining whether the defendant extorted Entertainer.

4       12. Through my discussions with AUSA Kim and based on the Court's
5  May 18 Order, I understand that Your Honor has instituted a procedure, at least
6  with respect to the Early Return Subpoenas, whereby the documents responsive to
7  the Early Return Subpoenas are returnable to the Court and not the defense and that
8  any document produced will in the first instance be reviewed by Your Honor *in
9  camera*. I further understand that Your Honor only intends to provide to the
10 defense those documents that the Court deems are relevant to this proceeding.

11       13. With that understanding, we have provided copies of documents that
12 are responsive to the Early Return Subpoenas issued to the Entertainer, Manager,
13 Lynn A. Neils, Joseph Perry, and J. Reid Hunter by separate cover to Your Honor's
14 Chambers ("the Subpoenaed Documents"). Consistent with the Protective Order
15 issued by Your Honor in this case, we have deleted any identifying information
16 related to the Manager or Entertainer on the Subpoenaed Documents and have
17 inserted the term "Entertainer" or "Manager" in lieu of their names. I submit that
18 the defense is not entitled to any of these documents, as they are not relevant to any
19 issue in the upcoming trial.

20       14. One of the documents provided to the Court was a management
21 contract between the Entertainer and the Manager ("the Management Agreement").
22 As the Court will observe, the Management Agreement pre-dates the conduct
23 alleged in the Indictment by more than six years and has absolutely nothing to do
24 with the defendant's extortionate scheme to obtain $1 million from Entertainer.
25 Rather, the Management Agreement, generally speaking, describes the services that
26 the Manager will provide the Entertainer and the fees that the Manager will earn in
27 exchange for those services.

28

15. Because the defense's application for the Early Return Subpoenas was submitted *ex parte*, I have no knowledge of the offer of proof—if any—that the defense provided the Court regarding their request for the Management Agreement. Having reviewed the agreement myself, I submit there is nothing about the Management Agreement that relates to the underlying facts of, or issues to be decided in, the upcoming trial. The defense's request for the Management Agreement amounts to an impermissible fishing expedition.

16. The defense has requested the engagement letters for any lawyers who have represented the Manager and/or Entertainer "in connection to matters involving Jordan Sweet and Benjamin Koziol." Several engagement letters were included in the package of Subpoenaed Documents. None of those documents bear on, or are relevant to, the factual issues to be resolved at the defendant's upcoming trial. It is hard to see how these engagement letters, which are mainly boilerplate and set forth what fees can or will be charged, would be relevant to any issue relevant to the defense. To the extent that the defense wants to question trial witnesses, such as Mr. Hunter or Ms. Wright, for example, regarding who they were representing when they had interactions with the defendant or his wife, they could simply do so; they need not have, nor should they be permitted to obtain, the engagement letters, which would be cumulative to their testimony.[1]

17. Defendant's demand in the Trial Subpoena that I produce copies of *all* electronic communications between me and the United States Attorney's Office from October 1, 2017 until present is not only overbroad and clearly a fishing expedition, it is also an attempt to make an end-run around the discovery rules.

18. I understand, based on my discussions with AUSA Kim, that the Government has already provided the defense with certain copies of their

---

[1] We note that, under California State law (which differs from federal law), engagement letters are considered confidential communications protected by the attorney-client privilege. *See* Business and Professions Code § 6149.

communications with me, consistent with their discovery obligations. If the defense believes that they have not received all the documents from the Government to which they maintain they are entitled, the defense should make an application to this Court for relief—and not issue a Trial Subpoena to me as an end-run around to their discovery dispute with the Government.

19. Moreover, because the defense issued the Trial Subpoena without leave of the Court, the defense had no occasion to submit an offer of proof to Your Honor regarding the basis of their request for *all* communications between myself and the Government from October 1, 2017 to the present. Nor could the defense make such a showing. For example, there is neither a basis for the defense to have my communications with the Government regarding scheduling matters nor is there a basis for the defense to have my communications regarding the Victims' privacy concerns. These topics, among others, are simply not relevant to the issue in this case—whether the defendant attempted to extort the Entertainer. Accordingly, the Court should determine that the defense's request for these communications was entirely improper.

20. Finally, both the Early Return Subpoenas issued to me and my colleague, Joseph Perry, and the Trial Subpoena issued to me, call for our trial testimony. The only involvement that either Mr. Perry or I had concerning the defendant's attempted extortion scheme was a letter that I sent to the defendant via email—prior to our referral of the matter to the U.S. Attorney's Office and the FBI—demanding that he cease his extortionate communications to the Entertainer. I have been informed by the AUSAs that the Government does not intend to introduce my letter into evidence at trial. Accordingly, I see no non-privileged testimony that either I or Mr. Perry could provide at the upcoming trial, and subpoenaing both Mr. Perry and myself is nothing short of excessive and overreaching. The Early Return Subpoena and Trial Subpoena to me, and the Early Return Subpoena to Mr. Perry, should accordingly be quashed.

21. I declare under penalty of perjury that the foregoing is true and correct.

Dated May 23, 2018

                                      Baker Botts L.L.P.

                                      By:   /s/ Lynn A. Neils

                                      Attorney for Entertainer and Manager