UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL         'O'

| Case No. | 2:18-cr-00022-CAS | Date | June 1, 2018 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Ann Kim, Not Present<br>Eddie Jauregui, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder,<br>Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Benjamin Koziol | NOT | X | | Christy O'Connor | NOT | X | |
| | | | | Waseem Salahi | NOT | X | |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION IN LIMINE TO EXCLUDE JAIL CALLS (Dkt. 64, filed May 21, 2018)

## I.  INTRODUCTION

On January 19, 2018, a grand jury indicted defendant Benjamin Koziol ("defendant") on one count of attempted extortion affecting interstate commerce by nonviolent threat, in violation of 18 U.S.C. § 1951(a).  Dkt. 6.  The government alleges that defendant attempted to extort Andy Grammer (the "Entertainer"), a popular entertainer, by threatening to sue him for $1 million based on false allegations that the Entertainer physically assaulted defendant and sexually assaulted defendant's wife, Jordan Sweet Koziol ("Sweet"), during a nude massage on January 10, 2016 in Playa Vista, California.  The government alleges that it was the Entertainer's manager, Benjamin Singer (the "Manager"), not the Entertainer, who was at the Playa Vista address on January 10, 2016, and that neither Sweet nor defendant was assaulted. Id.; dkt. 73.  Trial commenced on May 29, 2018.

On May 21, 2018, defendant filed a motion in limine to exclude recordings of three portions of a call he placed from jail on March 17, 2018.  Dkt. 64 ("MIL").  On May 23, 2018, the government filed an opposition and moved to admit the recording of a separate jail call placed by defendant on March 14, 2018.  Dkt. 74 ("Opp'n").  The Court held a hearing on May 29, 2018, and provided a tentative ruling granting defendant's motion in part.  The government thereafter filed a supplemental brief. ("Supp. Brf.").  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

On May 18, 2018, the government notified defense counsel of its intent to introduce at trial three recorded excerpts from a phone call that defendant made to an unidentified female on March 17, 2018 while he was in custody at the Metropolitan Detention Center in Los Angeles, California. MIL at 2. During the call, defendant discussed Sweet's interview with the Federal Bureau of Investigation ("FBI") that had occurred on January 17, 2018, referring to a summary of the interview provided to him in discovery.

The first excerpt of the call is marked as Exhibit 39A. In this excerpt, defendant tells the unidentified female that he read Sweet's interview with the FBI, and that Sweet "f**ked" him "big time." MIL, Ex. A. Defendant stated that although he is still going to trial, Sweet's interview "definitely didn't help [him] at all, at all."

In the second excerpt, marked as Exhibit 40A, defendant discusses his sentencing guidelines with the unidentified female, noting that his offense level is high because of the amount of money he demanded from the Entertainer. He states: "Because I had asked so, for so much on the lawsuit, it bumps it up. If I had only asked for like 10, or 20, 30 thousand dollars." MIL, Ex. B.

In the third excerpt, marked as Exhibit 41A, defendant continues to discuss Sweet's interview with the FBI, lamenting:

> I don't know why Jordan couldn't keep her f**king mouth shut. I told her not to give f**king interviews to the police ever, ever. She f**king knows. She just went and, just went and give 'em, f**king told them basically everything. Give 'em the whole smoking gun on the f**king case.

MIL, Ex. C. He added that he did not think Sweet "intentionally meant to" but "she said everything" and "unintentionally . . . she f**ked [him] big time." <u>Id.</u>

In addition, the government moves in limine to admit an excerpt from another jail call placed by defendant three days earlier, on March 14, 2018, in which he stated:

> Make sure Jordon is not . . . When you talk to Flann, tell Jordan not to talk to anybody else, any more interviews, and make sure she's not talking over the phone, will you? She can really f**k me in anything she says, I don't think she realizes anything she says can . . . .

Opp'n at 12.

## III. DISCUSSION

Defendant moves to exclude the recordings identified as Exhibits 39A and 41A on the grounds that they contain other "bad act" evidence and should be excluded pursuant to Federal Rule of Evidence 404(b). In addition, defendant moves to exclude the recordings identified as Exhibits 39A, 40A, and 41A on three grounds: (1) the recordings are unduly prejudicial because they reveal defendant's in-custody status; (2) the recordings contain hearsay and their admission would violate the Sixth Amendment's Confrontation Clause; and (3) the probative value of the recordings is substantially outweighed by the danger of unfair prejudice and misleading the jury under Federal Rule of Evidence 403. Last, and with respect to the excerpt marked Exhibit 40A, defendant argues that this excerpt contains out-of-court statements relayed to defendant by his attorneys regarding the Sentencing Guidelines, and that these statements impermissibly invite the jury to consider the potential penalties defendant faces. The Court addresses each argument below.

### A. Federal Rule of Evidence 404(b)

Defendant argues that Exhibits 39A and 41A contain other "bad act" evidence that the government failed to timely notice. MIL at 4. Defendant explains that the recordings are "arguably evidence of a crime separate from the one with which he is charged: witness tampering under 18 U.S.C. § 1512(b)," and that the government failed to provide reasonable notice pursuant to Rule 404(b)(2)(A) given the crime suggested by the recordings. Id. at 7. The government responds that defendant's statements do not constitute other acts for purposes of Rule 404(b), as defendant telling his wife not to give interviews concerns this case and not some other bad act. Opp'n at 11–12.

The Court concludes that Exhibits 39A and 41A do not impermissibly raise other "bad acts" under Rule 404(b) insofar as the government does not appear to offer these excerpts as evidence of witness tampering, and instead offers the excerpts as evidence of consciousness of guilt for the offense charged.

### B. Defendant's In-Custody Status

Defendant argues that Exhibits 39A, 40A, and 41A are unduly prejudicial because they reveal defendant's in-custody status, which would erode defendant's constitutionally-protected presumption of innocence in the eyes of the jury. MIL at 3–4, 6–7. The government argues that the excerpts do not disclose his custodial status. Opp'n at 11.

Upon review of the excerpts of the March 17, 2018 jail call and the March 14, 2018 jail call, the Court observes that these excerpts do not reference defendant's custodial status. Given

that the government asserts that its agent should not be required to testify to the calls' origins, as the recordings are accompanied by business records declarations that have been produced to the defense, the Court concludes that the excerpts identified do not impermissibly reveal defendant's custodial status.

### C.     Hearsay and Federal Rule of Evidence 403

Defendant contends that the references in his March 17, 2018 jail call to the FBI report containing Sweet's statements constitute "inferential hearsay." MIL at 5. Black's Law Dictionary defines "inferential hearsay" as "[h]earsay that is implied in testimony that suggests the contents of a conversation that is not explicitly disclosed by the testimony." BLACK'S LAW DICTIONARY (10th ed. 2014). Defendant indicates that both the Eleventh and Fifth Circuits have recognized that this type of inferential or implied out-of-court statement may be inadmissible on hearsay grounds. See Hutchins v. Wainwright, 715 F.2d 512, 516 (11th Cir. 1983) (holding that police officers' testimony about their investigative steps based on their conversations with a non-testifying informant, even without offering content of conversations with that informant, constituted hearsay because what the informant "knew was readily inferred"); see also Favre v. Henderson, 464 F.2d 359, 362 (5th Cir. 1972) (holding that officer's testimony based on information received from two confidential informants was inadmissible on hearsay grounds because "although the officer never testified to the exact statements made to him by the informers, the nature of the statements . . . was readily inferred"). Various state courts have affirmed the exclusion of similar inferential hearsay statements. See, e.g., Postell v. State, 398 So.2d 851, 854 (Fla. Dist. Ct. App. 1981); State v. Bankston, 63 N.J. 263, 307 A.2d 65 (1973); State v. Chernick, 278 S.W.2d 741 (Mo. 1955); State v. Jones, 583 S.W.2d 561 (Mo. App. 1979). Defendant further argues that because the recordings "will inform the jury of the substance" of Sweet's statements to the FBI, admitting them would violate his rights under the Confrontation Clause. See Crawford v. Washington, 541 U.S. 36 (2004).

In turn, the government argues there is "no binding authority for the proposition that a defendant's own inculpatory statements constitute hearsay merely because they suggest statements made by another person." Supp. Brf. at 1. Because the recordings are defendant's own words and allegedly demonstrate consciousness of guilt, the government argues that they constitute "admissions by a party-opponent and are therefore not hearsay" under Federal Rule of Evidence 801(d)(2). United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000). At the March 29 hearing, the government asserted that any reference by defendant to the FBI interview is to his wife's *conduct*, not her statements, and therefore it does not constitute hearsay. The government asserts there is no Confrontation Clause issue because if defendant wishes to explain his statements, he is free to take the stand. Id. at 3. To the extent that defendant's jail

calls contain hearsay because they imply his wife's statements, the government contends that such statements are admissible as adoptive admissions. See Schering Corp. v. Pfizer Inc., 189 F.3d 218, 239 (2d Cir. 1999) (holding that "a party admission containing hearsay is admissible where . . . the admission draws inferences from the underlying hearsay and thus 'manifest[s] an adoption or belief in its truth.' ") (quoting Fed. R. Evid. 801(d)(2)(B)). The government further argues that any concerns regarding inferential hearsay could be resolved with an instruction that the jury may only consider the jail calls for the limited purpose of showing the defendant's state of mind. Last, the government asserts that defense counsel opened the door to admitting the recordings for this limited purpose by arguing during his opening statement that this case is about "what defendant believed."

As an initial matter, the Court observes that defendant's references in Exhibits 39A and 41A to Sweet's FBI statements constitute a form of multiple hearsay that would imply to the jury that Sweet's FBI statements were inculpatory when instead her statements, in part, corroborated defendant's claims against the Entertainer. Contrary to the government's assertions, defendant's statements do not appear to solely reference Sweet's *conduct* in agreeing to be interviewed by the FBI, and instead also reference the *substance* of her statements during that interview. Although defendant's statements do not describe Sweet's interview in detail, the Court concludes that the purportedly inculpatory nature of Sweet's FBI statements would be readily inferred by a jury. The Court is also unpersuaded by the government's assertion that the statement should come in as an adoptive admission because defendant did not manifest an intent to adopt the statement.

With respect to defendant's arguments under Rule 403, defendant contends that the excerpts from Exhibits 39A and 41A are inadmissible because they create the misleading impression that Sweet's interview contradicts defendant's factual allegations underlying his claims, when in reality her interview corroborates many of defendant's claims, including that the Entertainer sexually assaulted Sweet. MIL at 3–4. The government argues, in turn, that that these excerpts are relevant because they tend to show identity, intent, and consciousness and fact of guilt, and accordingly these statements are highly probative of defendant's guilt. Opp'n at 2–4. The government further argues that their probative value is not outweighed by the considerations set forth in Rule 403 insofar as the statements are not misleading. Opp'n at 6–10.

The Court concludes that insofar as defendant's statements in Exhibits 39A and 41A are probative of defendant's state of mind and insofar as his state of mind was referenced during defense counsel's opening statement, the selected excerpts nevertheless impermissibly invite the jury to speculate as to the contents of Sweet's FBI interview. Moreover, the Court observes that because Sweet will not be testifying, there is no opportunity to cross-examine Sweet regarding

her statements to the FBI, and therefore, the potential for unfair prejudice substantially outweighs the relevance of these statements such that they should be excluded under Rule 403. Accordingly, the Court **GRANTS** defendant's motion to exclude the excerpts marked Exhibit 39A and Exhibit 41A.[1]

### D.     Reference to Sentencing Guidelines

With respect to the excerpt marked as Exhibit 40A, the Court has reviewed the excerpt and concludes that defendant's statement that "it bumps it up" is vague, and does not appear to refer to defendant's potential sentence. Nonetheless, to ensure that the jury would not impermissibly speculate as to the meaning of "it bumps it up," the government offered during the May 29 hearing to remove the portion of the excerpt in which defendant stated, "it bumps it up." The Court approved this redaction during the hearing, and concludes that this redaction sufficiently addresses the possibility of any impermissible jury speculation as to defendant's potential sentence. Accordingly, the Court **DENIES** defendant's motion to exclude the March 17, 2018 jail call excerpt marked Exhibit 40A.

### E.     March 14, 2018 Jail Call

At the May 29 hearing, defense counsel argued that the excerpt from the March 14, 2018 jail call raises the same problematic inference insofar as it invites the jury to speculate as to the content of Sweet's FBI interview. However, having reviewed the excerpt of the March 14, 2018 jail call, the Court concludes that this excerpt is admissible insofar as it merely references potential *prospective* statements from Sweet, and insofar as it is offered as evidence of defendant's consciousness of guilt. See United States v. Brashier, 548 F.2d 1315, 1325 (9th Cir. 1976) ("evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact."). Additionally, during trial on May 31, 2018, the government agreed to redact the excerpt, so that it would appear as follows:

> Make sure Jordon is not . . . When you talk to Flann, tell Jordan not to talk to anybody [REDACTED], and make sure she's not talking over the phone, will you? She can really f**k me in anything she says, I don't think she realizes anything she says can . . . .

---

[1]     Because the Court grants defendant's motion to exclude the excerpts in Exhibits 39A and 41A on multiple hearsay and Rule 403 grounds, the Court does not address defendant's Confrontation Clause argument.

Accordingly, the Court **GRANTS** the government's motion to admit this redacted excerpt of defendant's March 14, 2018 jail call.

## IV.  CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant's motion to exclude the March 17, 2018 jail call excerpts marked Exhibit 39A and Exhibit 41A.  The Court **DENIES** defendant's motion to exclude the March 17, 2018 redacted jail call excerpt marked Exhibit 40A.

The Court **GRANTS** the government's motion to admit the redacted excerpt from defendant's March 14, 2018 jail call.

IT IS SO ORDERED.

|  |  |
|---|---|
| Initials of Deputy Clerk | 00 : 00 |
|  | CMJ |