1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3      **HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**

6              **Plaintiff,**

7       **vs.**                        **Case No. CR 18-22-CAS**

8   **BENJAMIN KOZIOL,**

9              **Defendant.**
   _____/

10

11

12          **REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS**
                **TRIAL DAY 1 - PM SESSION**
13              **TUESDAY, MAY 29, 2018**
                     **1:00 P.M.**
14              **LOS ANGELES, CALIFORNIA**

15

16

17

18

19

20

21

22  _____

23          **TERRI A. HOURIGAN, CSR NO. 3838, CCRR**
            **FEDERAL OFFICIAL COURT REPORTER**
24              **350 WEST FIRST, ROOM 4311**
            **LOS ANGELES, CALIFORNIA  90012**
25                  **(213) 894-2849**

1          **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4          NICOLA T. HANNA
           United States Attorney
5          BY:  ANN KIM
               EDDIE JAUREGUI
6          Assistant United States Attorneys
           United States Courthouse
7          312 North Spring Street
           Los Angeles, California  90012
8

9

     **FOR THE DEFENDANT:**
10
           HILARY LEE POTASHNER
11         Federal Public Defender
           BY:  CHRISTY O'CONNOR
12               WASEEM SALAHI
           Deputy Federal Public Defenders
13         Central District of California
           321 East Second Street
14         Los Angeles, California 90012

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**



1                        **INDEX OF EXAMINATION**

2

3                                                    **Page**

4    **JURY SELECTION PROCEEDINGS:**                    **9**

5

6                          **(No examinations.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**INDEX OF EXHIBITS**

**(No exhibits)**

\* \* \*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**

**LOS ANGELES, CALIFORNIA; TUESDAY, MAY 29, 2018**

**1:00 P.M.**

**--oOo--**


THE COURTROOM DEPUTY:  Please remain seated and come to order.  This Court is again in session.

Calling calendar Item No. 1, *CR 18-22, United States of America versus Koziol.*

Counsel, please restate your appearances.

MS. KIM:  Good afternoon, Your Honor.  Ann Kim and Eddie Jauregui, on behalf of the United States.  With us at counsel table is FBI Special Agent Cody Burke.

THE COURT:  Good afternoon.

MS. O'CONNOR:  Good afternoon, Your Honor.  Christy O'Connor and Waseem Salahi, Federal Defenders.

Mr. Koziol is present.

THE COURT:  Good afternoon.

All right.  We're about ready to begin jury selection.  I guess the government has inquired whether the Manager should be present today, and I just can't tell you.  If not, the government, his counsel will be present.

These jurors will have parked and need to get to their cars, so I'm going to have to let them go between 5:30 and 6:00, I think, if we do in fact get a jury empanelled in that time period.

1    So it sounds to me like even if we start with him, we may

2    not be able to finish with him today.

3    If the government is going to be an hour and a half, what

4    do you think the cross will be, if you have any idea?

5    If you don't know, I understand.

6    MS. O'CONNOR:  We're talking about the Manager?

7    THE COURT:  Uh-huh.

8    MS. O'CONNOR:  We would estimate a half hour to an

9    hour.

10    THE COURT:  Okay.  Somewhere here, amidst things I

11    have here -- I have everyone's proposed voir dire, but I don't

12    know what happened to it.

13    Okay.  Everyone, I gather that not any of you have tried a

14    case with me before, so let's just review how I propose to do

15    this.

16    We're going to seat the first 12 based on the computer

17    ordering, and then after we have the 12 in place, I'm going to

18    ask each of them about how they and the other adults in their

19    household are employed, and then ask about prior jury service.

20    After that, I'm going to ask those of your questions,

21    which I think are appropriate.

22    And then before any challenges for cause or preemptory

23    challenges, I will invite you over to sidebar, which is over

24    here to let you exercise any challenge for cause, and I will

25    rule on those, yea or nay.

If we have people who have scheduling problems, I may have you come over after we have gone through the entire group to see if there is anyone in the entire venire who should be excused.

To be a little more precise, once they come into the room, I'm going to tell them what the case is about, have each side introduce themselves, and their prospective witnesses.

Obviously, in the case of the defense, they need not put on a case, and they don't have to disclose the witnesses unless they know that they are going to call someone, no matter what.

Then I'm going to talk about the dates we intend to be in trial and see if anyone has an irretrievable scheduling problem or if anyone has -- based on the description of the case which is going to be very basic at this point -- a problem which would prevent them from serving.

Once we get through all of those people, I will have you come up to sidebar and then we will put the first 12 in the box, and proceed to go through their personal backgrounds, prior jury service, and your voir dire questions.

I will tell the crowd seated out in the courtroom to remember the questions because if they are called up, we will ask them if there is anything based on those earlier-asked questions, that they should bring to our attention.

If you have only one preemptory challenge, that is fine. But if you are absolutely certain that there is certain people

1    in the box that you want to excuse, I would appreciate your

2    letting me know that when you are at sidebar, just so we can

3    move the process along.

4         I understand if you want to be sure that you are making

5    your selection based on a completely full jury box, and that is

6    fine.

7         If one side passes, you do not lose your preemptory;

8    however, if both sides pass, then that will become the jury.

9         Should I clarify anything for you?

10             MS. O'CONNOR:  That's clear, Your Honor.

11             MS. KIM:  No, Your Honor.

12             THE COURT:  Okay.  Then why don't we bring the jury

13   down.

14             MS. KIM:  Your Honor, before we bring the jury in, I

15   would like to just get the Court to state on the record the

16   condition of defendant's injuries, given that it was an issue

17   on Friday, and it quite frankly looks much better, and we would

18   like the record to reflect just in case this becomes an issue

19   on down the line of his appearance.

20             THE COURT:  Okay.  Well, I issued an order anyway on

21   Friday and indicated I made findings and why in the interest of

22   the public and a speedy trial that we were going forward.

23        But that said, the defendant appears today not to have

24   black eyes.  I know he has had the assistance of makeup, but

25   where I'm sitting, which is certainly closer to him than the

1  jury, it does not appear that he's been involved in an

2  altercation.

3            MS. KIM:  Thank you, Your Honor.

4            THE COURT:  Okay.  All right.  Let's bring the jury

5  down.

6            THE COURTROOM DEPUTY:  This Court is in recess.

7                      (Recess.)

8            THE COURTROOM DEPUTY:  All rise.

9        (PROSPECTIVE JURY PANEL ENTERS THE COURTROOM

10                   AT 1:50 P.M.)

11           THE COURTROOM DEPUTY:  Counsel, you may be seated.

12  If I could have the jurors rise and raise your right hand.

13       Ladies and gentlemen, do you and each of you solemnly

14  swear that you will make true answers to such questions as may

15  be put to you touching upon your qualifications to serve as the

16  trial jurors in the cause now before the Court, so help you

17  God?

18           PROSPECTIVE JURORS:  I swear.

19           THE COURTROOM DEPUTY:  Please be seated.  Thank you.

20  Okay.

21       Counsel, I will be bringing the Judge out.

22       Please remain seated and come to order.  This United

23  States District Court is now in session.  The Honorable

24  Christina A. Snyder, Judge presiding.

25       Calling calendar Item No. 1, *CR 18-22, United States of*

1    *America versus Benjamin Koziol.*

2          MS. KIM:  Good afternoon, Your Honor.  Ann Kim on

3    behalf of the United States.  Eddie Jauregui also is on behalf

4    of the United States, and with us at counsel table is Special

5    Agent Cody Burke.

6          MS. O'CONNOR:  Good afternoon, Your Honor.  Christy

7    O'Connor and Waseem Salahi with the Federal Defender's Office,

8    and Mr. Koziol is present.

9          THE COURT:  Good afternoon.  We are about to empanel

10   a jury in this case, which is a criminal case.  I'm going to

11   tell you a little bit about it, a little bit about the time

12   commitment, which is not going to be a long-time commitment.

13       But, in this case there is -- the defendant is charged in

14   a one-count indictment with attempted extortion, affecting

15   interstate commerce by non-violent threat in violation of Title

16   18, United States Code, Section 1951(a), which is the Hobbs

17   Act.

18       The defendant has pleaded not guilty to the charges.  He

19   is presumed innocent.  He need do nothing in this case.

20       It is the government's burden to prove guilt beyond a

21   reasonable doubt.

22       This case is estimated for approximately two days.

23       However, there are a few caveats which you should be aware

24   of because in a moment, we're going to go around and see if any

25   of you have any problems that prevent you from serving on the

1    jury.

2        First of all, we will go today until about 5:30, I expect

3    we will have a jury selected, and I'm hopeful we can do opening

4    statements today.

5        Tomorrow will be a short day, because I have a

6    prescheduled mole surgery on my face which cannot be continued,

7    and it has taken me six weeks to get it scheduled, and if I try

8    to continue it, it will be another six weeks.

9        So unfortunately, due to my own circumstances, we will not

10   be here tomorrow afternoon.  We can only be here in the

11   morning.

12       I am going to have to depart probably at 12:45 tomorrow to

13   be at the 1:30 appointment.  And what my plan would be is

14   tomorrow it looks like we're going to need tomorrow go from

15   9:30 to 12:45, and then let you go home.

16       I have every expectation of being back on Thursday.

17       If I'm back on Thursday, and we can put in a full day,

18   then I think we should be pretty much on schedule.

19       There are witnesses in this case who have scheduling

20   problems; however, and travel plans which cannot be canceled.

21   So it may be if we don't move as quickly as everyone

22   anticipates that this case could go into Tuesday or Wednesday

23   of next week.

24       So, although I am hopeful that it will not, I'm hopeful

25   that we will be done this week given all of the uncertainties,

1    that I bring to the table, plus the fact that these things can

2    take longer, sometimes than expected.

3         I'm going to ask you if you can be available the remainder

4    of this week and then Tuesday and Wednesday of next.  It's

5    going to be my first question.

6         Then my second question, if we don't finish for some

7    reason, it's at least remotely conceivable that there may be a

8    witness that has to come back later in the month, again because

9    of the scheduling problems that cannot be changed; I hope not.

10        But I don't want to lead you to believe that there might

11   not be an occasion where you have to come back for another half

12   day later in the month.

13        But once we have a jury empaneled, we will pick a group of

14   people who hopefully can come back and we will pick a day that

15   comports with your schedule because we know all of us know that

16   your time is very valuable and we don't want to inconvenience

17   you.

18        So, the first thing is the question of how many days, and

19   as I say, I want to know, and we will go around with a

20   microphone, row by row, which if any of you cannot serve all of

21   the days of this week, and if necessary, Tuesday and Wednesday

22   of next week, please keep in mind if you are not -- we're not

23   quite ready, CJ -- if you can't -- if you say that you can't

24   serve, I can't send you home.

25        I will have to send you back to the jury assembly room, so

UNITED STATES DISTRICT COURT

1  that you can be considered for another jury.

2       So, I'm not in a position to excuse anyone.  You are here

3  because you are either due to do jury service or you have been

4  pre-qualified for some reason.

5       So let me start with that admonition.  Now, I'm going to

6  ask counsel at each table to tell you what witness -- first to

7  introduce themselves -- and tell you what witnesses they expect

8  to call.

9       In the case of the defendant, because the defendant does

10  not have to put on a case, the defendant need not tell you

11  about any witnesses, but I have asked the defendant if they are

12  absolutely sure they would be calling a witness to let you

13  know.

14       And then as part of the preliminaries here, I'm going to

15  ask you if you think you know or you have family members who

16  may know the people who have been identified.

17       After that, we're going to call you up to the jury box.

18  We're going to call the first 12.  The order in which you were

19  called has been determined by a computerized sheet, so you will

20  come up to the jury box, and then I'm going to ask each of you

21  what you and the other adults in your household do for a

22  living.  And then I'm going to ask you about prior jury

23  service.

24       Thereafter, I'm going to read questions which have been

25  submitted by both sides, which seek to elicit whether you have

1   any biases or issues that might preclude you from serving on

2   the jury.

3        I will ask those questions to all of the people assembled

4   in the box, but if you are in the audience, please keep them in

5   mind because I don't want to go through the questions, question

6   by question, again unless you have an issue.

7        And so if you are called up, after the first 12, and I

8   read all of my questions that have come from both sides, I'm

9   going to look and say, do you have anything you need to bring

10  to our attention, and if you do, I will expect you to remember

11  the questions.

12       Now, also, sometimes questions we ask may be embarrassing

13  to you, and if you need to come over to sidebar and address

14  counsel and me, please raise your hand and let me know that,

15  because we want a truthful answer.

16       It's very important in this process that we know as much

17  about any predilection you may have or anything that might

18  affect your ability to be a fair and impartial juror, so please

19  even if you have to do it at sidebar, let me know and come up

20  to sidebar because we want a truthful, honest answer, but at

21  the same time we don't want to embarrass you.

22       That said, let me now begin with the government.

23       Ms. Kim and Mr. Jauregui, do you want to introduce

24  yourselves and tell us who you are going to call?

25            MS. KIM:  Good afternoon, everyone.  I'm Assistant

1   United States Attorney, Ann Kim.

2          MR. JAUREGUI:  I'm Assistant United States Attorney,

3   Eddie Jauregui.

4          MS. KIM:  The witnesses the government intends to

5   call are Cody Burke, Andy or Andrew Grammer, Marcus Gray,

6   J. Reid Hunter, Chris H. Nam, Sara Shivarani, Ben or Benjamin

7   Singer, and Kerry Garvis Wright.

8          THE COURT:  Okay.

9          MS. O'CONNOR:  Hello, everybody.  My name is Christy

10  O'Connor.  This is Waseem Salahi.  We're from the Federal

11  Public Defender's Office and together we represent Benjamin

12  Koziol.

13      Our witnesses may include Lynn Neils and Veronica

14  Plascencia Wells.

15          THE COURT:  Okay.  Let me begin, if any of you think

16  you personally know or otherwise are familiar with any of the

17  names that have been mentioned, please raise your hand.

18      (No response.)

19          THE COURT:  Okay.  Now, I'm going to go row by row

20  and see if anyone has a scheduling problem.

21      Ms. Jeang is going to come around with a microphone if we

22  can go row by row.  Row 1 on this side.

23      If you have a problem with the dates I have proposed,

24  please raise your hand and then I will ask her to --

25          THE COURTROOM DEPUTY:  Please state your name.

```
 1              PROSPECTIVE JUROR:  Your Honor, I am working for a
 2    company that requires my presence in different countries of the
 3    world.
 4        I received the information to attend today, and I'm
 5    supposed to be finished by 4th of June, and I scheduled the
 6    trips with our executive because we're going to -- it's a joint
 7    venture.  I have to visit two countries next week.
 8        I will not mind to stay here on a jury this week, but next
 9    week I have already scheduled several executives of companies,
10    they come from different countries that we need in Europe to be
11    able to do this job, so I will appreciate if something can be
12    done.
13              THE COURT:  Okay.  First of all, could you tell us
14    your name.
15              PROSPECTIVE JUROR:  My name is Danko Stambuk.
16              THE COURT:  Okay.  Number 7.
17              THE COURTROOM DEPUTY:  First page.
18              THE COURT:  Okay.  We will make a note of it.  I
19    will meet with counsel when we're through with this process,
20    and I will let you know our decision.
21              THE COURTROOM DEPUTY:  Is anyone else on the first
22    row, okay.  Second row?
23        Third row?
24        Fourth row?  State your name, please.
25              PROSPECTIVE JUROR:  Good afternoon, Cindy Zacatenco.
```

1   The reason why I can't stay is I'm only a part-time worker and

2   I believe that the being here would affect my financial status.

3           THE COURT:  Okay.  We will think about it and we

4   will let you know.

5       Anyone else?

6           THE COURTROOM DEPUTY:  Anyone else?

7           PROSPECTIVE JUROR:  I'm Mary Rose Manzana.  If I

8   would work for like two to three days there are six people that

9   won't get paid, too, because I work in a dental office, and I'm

10  the only one who is seeing the kids there.  I'm a dentist.

11          THE COURT:  Okay.  You are a dentist, okay.  We will

12  take that up.

13          THE COURTROOM DEPUTY:  Anyone else in this row?

14      No?

15      Are you okay?  Anyone in the last row?

16          PROSPECTIVE JUROR:  Good afternoon, Your Honor.  My

17  name is Jerry Decapua.  I work in a business.  There is only

18  two of us in the business, the owner and myself.

19      Currently, the owner is covering for me but won't be able

20  to cover for me throughout a long trial that would extend into

21  next week.

22          THE COURT:  Okay.  What kind of business is it,

23  Mr. Decapua?

24          PROSPECTIVE JUROR:  We're booksellers.

25          THE COURT:  Okay.  We will make a note.

1      Okay.  Did we have another hand up in Row 1, before you go
2  to the other side?
3           PROSPECTIVE JUROR:  Hi, Your Honor.  I'm Jennifer
4  Law, and my company doesn't pay for jury duty.  And I also had
5  to take a vacation day just to be here, and I won't get paid
6  for yesterday because I'm not there today.
7      It's a hardship.  I was newly separated from my husband,
8  and I'm on my own.
9           THE COURT:  Okay.  We will make a note and counsel
10  and I will discuss it.
11      Anyone else on this side of the room?
12           THE COURTROOM DEPUTY:  First row on this side.  How
13  about this row?
14           PROSPECTIVE JUROR:  Your Honor, Phil Hamil.  My wife
15  has surgery on Monday on her stomach.  I took next week off to
16  care for her, so it would be a hardship on me.
17           THE COURT:  Okay.  Who is taking care of her today?
18           PROSPECTIVE JUROR:  Today, she's okay.  But next
19  week, she will have her surgery.
20           THE COURT:  I see, the surgery is next week.
21           PROSPECTIVE JUROR:  Yes.
22           THE COURT:  Okay.  And there is no one else who can
23  assist?
24           PROSPECTIVE JUROR:  No.
25           THE COURT:  Okay.  Anyone else?

```
 1              THE COURTROOM DEPUTY:  Anyone I missed?

 2              PROSPECTIVE JUROR:  Your Honor, my name is Jonathan

 3    Junqua.  I will be heading to medical school pretty soon and

 4    tried to schedule jury duty a little bit earlier, so I would be

 5    able to attend for the full amount of time.

 6         However, I am attending a MPH program that I got into,

 7    therefore, I have a slight scheduling conflict later on next

 8    week, especially.

 9         I will probably be able to get here this week, but next

10    week would be a little bit difficult.  I would have to talk

11    with my school and program administrator.

12              THE COURT:  Okay.  Thank you.

13              THE COURTROOM DEPUTY:  Anybody else?  I think there

14    was somebody on this side.

15              PROSPECTIVE JUROR:  Good morning.  My name is --

16    good afternoon, my name is George Kita.  And I can serve this

17    week.

18         Next week, Tuesday, I would have a calendar conflict.  I'm

19    an attorney and I represent clients in court.

20              THE COURT:  Okay.  What if we had didn't go on

21    Tuesday and had to resume on Wednesday, would you be available

22    then?

23              PROSPECTIVE JUROR:  Yes.

24              THE COURT:  Okay.  Thank you.

25              PROSPECTIVE JUROR:  Hello, my name is Abraham
```

```
 1   Rosenberg, and what Your Honor said about a witness later in

 2   the month, I'm flying to New York on June 14th, and I will be

 3   back late Monday evening on the 18th, but other than that, I'm

 4   fine this week and next week.

 5           THE COURT:  I think we're fine then.

 6       Is there anyone else?

 7           THE COURTROOM DEPUTY:  Judge, that concludes this.

 8           THE COURT:  Okay.  What is the number of the

 9   gentlemen, the attorney who has the conflict on Tuesday?

10           THE COURTROOM DEPUTY:  Your name was?  It is 50,

11   George Kita.

12           THE COURT:  At this juncture, may I see counsel at

13   sidebar so with can discuss these individuals?

14           THE COURTROOM DEPUTY:  One second.

15                       (Sidebar begins.)

16           THE COURT:  Okay.  So let's see.  The wife is having

17   surgery, what is your position on him?

18           MS. KIM:  Government believes he should be excused.

19           MS. O'CONNOR:  The defense agrees.

20           THE COURT:  Next, is the man whose traveling.

21           MS. KIM:  Your Honor, the government believes we

22   need to know what dates he will be unavailable next week before

23   we can make a determination.

24           THE COURT:  Okay.  Mr. Danko.

25           THE COURTROOM DEPUTY:  Mr. Danko, if you could come
```

1   forward.  We have some questions for you, make sure you speak

2   into the microphone.

3         THE COURT:  We want to know what dates will you be

4   traveling next week?

5         PROSPECTIVE JUROR:  I'm supposed to be in Europe on

6   the 4th, that means as soon as -- probably on Sunday, if I can.

7         THE COURT:  Okay.  You will return when?

8         PROSPECTIVE JUROR:  Probably ten days.

9         THE COURT:  Okay.  Thank you.

10        MS. KIM:  In light of Mr. Danko's travel schedule,

11   the government believes he should be excused as he's not

12   available at all next week.

13        MS. O'CONNOR:  The defense agrees.

14        THE COURT:  Okay.  We will excuse him.  Turn to the

15   next one, I show is Ms. Manzana, the dentist.

16        MS. KIM:  Your Honor, in light of the fact that

17   Ms. Manzana has stated that she is the only practitioner or

18   dentist of her practice, and she has patients that she needs to

19   see, the government believes she should be excused.

20        THE COURT:  Okay.

21        MS. O'CONNOR:  We agree with that from the defense.

22        THE COURT:  Okay.  We will excuse her.

23     Then our next one is Ms. Law who has the hardship.

24        MR. JAUREGUI:  Your Honor, I think we need a little

25   bit more information.  I think a lot of jurors think they are

1    not going to get paid, but it would be helpful to know who she

2    works for and what she does.

3            THE COURTROOM DEPUTY:  Ms. Law, Jennifer Law, if you

4    could come forward.

5            THE COURT:  Good afternoon.  Can you tell us who you

6    work for?

7            PROSPECTIVE JUROR:  I work for McKenna BMW.

8            THE COURT:  What do you do there?

9            PROSPECTIVE JUROR:  I handle all of the DMV, which

10   is time-sensitive, as of today.  Being late costs money.

11           THE COURT:  They don't pay for anything?

12           PROSPECTIVE JUROR:  No part of it.

13           THE COURT:  Do you have any sick leave or vacation?

14           PROSPECTIVE JUROR:  No.  I had to take sick leave

15   when I had foot surgery two months ago.

16           THE COURT:  Why don't you go back, then.  Thank you.

17           MS. KIM:  Your Honor, in light of the fact that

18   Ms. Law has claimed hardship, and she would not be paid, the

19   government believes that she should be excused.

20           MS. O'CONNOR:  We agree.

21           THE COURT:  Okay.  Ms. Law will be excused.

22       The next we have the part-time -- Zacatenco won't be paid

23   or be terminated.

24           MS. KIM:  We believe we need a little bit more

25   information before we can make a determination.

```
1              THE COURTROOM DEPUTY:  Ms. Zacatenco, if you could
2   come forward.
3              THE COURT:  You are in school, right?
4              PROSPECTIVE JUROR:  Yes.
5              THE COURT:  You have a part-time job?
6              PROSPECTIVE JUROR:  Yes.
7              THE COURT:  What is the part-time job?
8              PROSPECTIVE JUROR:  It's a call center in Brea.
9              THE COURT:  Okay.  And what do you think will happen
10  if you have to serve on this jury?
11             PROSPECTIVE JUROR:  Well, I only work 26 hours a
12  week, so that would greatly affect me.
13       I have to pay for my summer courses as well this semester,
14  so that's why I need to go to work.
15             THE COURT:  Okay.  I know you need to go to work but
16  that -- is there any way you can make up the time at another
17  time?
18             PROSPECTIVE JUROR:  No, because that call center is
19  open from 6:00 a.m. to 6:00 p.m. so by the time I would get
20  home it would be closed.
21             THE COURT:  Counsel, anything further you want me to
22  ask?
23             MS. O'CONNOR:  Could I just ask on what days she
24  works?
25             MS. KIM:  Nothing by the government.
```

```
 1              PROSPECTIVE JUROR:  Monday through Friday.
 2              THE COURT:  Okay.  Thank you.
 3         So what do you want to do?
 4              MS. KIM:  The government believes in light of the
 5    representations made by Ms. Zacatenco, she should be excused.
 6              MS. O'CONNOR:  We agree she should be excused.
 7              THE COURT:  Okay.  We will excuse her.
 8         Now, we have Mr. Junqua, he is the medical student.
 9              MR. JAUREGUI:  Your Honor, I believe he is starting
10    on an MPH program or something like that?
11              THE COURT:  NIH, I thought he said.
12              MR. JAUREGUI:  The point is we don't know when
13    exactly he is going to be unavailable, and it sounds like he
14    could work around this.  He says he has to make some phone
15    calls.
16              THE COURT:  Could you ask him up?
17              THE COURTROOM DEPUTY:  Mr. Jonathan Junqua, could
18    you come forward?
19              THE COURT:  Good afternoon.
20              PROSPECTIVE JUROR:  Good afternoon.
21              THE COURT:  This is the NIH that you have next week?
22              PROSPECTIVE JUROR:  An MPH, Master's in Public
23    Health.
24              THE COURT:  Okay.  What exactly do you have to do
25    next week in your MPH?
```

1          PROSPECTIVE JUROR:  Next week classes will be

2    starting.  My orientation will be up in the weekend, that is up

3    in Vallejo, up in the bay area.

4          THE COURT:  Okay.  When are your classes next week?

5          PROSPECTIVE JUROR:  My classes will be Monday

6    through Thursday.

7          THE COURT:  Okay.  And you have to do this as a

8    precursor to your beginning medical school?

9          MR. JAUREGUI:  No.  It is an additional application

10   that I submitted after getting accepted into medical school,

11   which basically the decision came later on after the initial

12   application.

13         THE COURT:  Okay.  Well, I'm a little lost.  Are you

14   going to do for the school for the MD or the MPH?

15         PROSPECTIVE JUROR:  I'm going for both.

16         THE COURT:  Where is this?

17         PROSPECTIVE JUROR:  In the Vallejo, in the bay area.

18         THE COURT:  What school?

19         PROSPECTIVE JUROR:  Touro University.  It is a DO

20   school, not an MD program.

21         THE COURT:  Okay.  Got it.  Anything further?

22         MS. KIM:  Nothing further, Your Honor.

23         MS. O'CONNOR:  No.

24         THE COURT:  Thank you very much.

25      Okay, what do we do about him?

1          MS. O'CONNOR:  I hate to be unsympathetic to his

2    scheduling conflict, but with any student, they would miss

3    classes, so I would object to him being excused for cause.

4          MR. JAUREGUI:  Same for the government.

5          THE COURT:  Okay.  Then we will have to keep him.

6      Okay.  So then next is Mr. Kita, who is the attorney.

7          MR. JAUREGUI:  He can come on Wednesday, so I'm not

8    sure there is any reason to call him up.

9          MS. O'CONNOR:  We agree.

10          THE COURT:  We're keeping him for now.

11      Then we have Mr. Decapua, who has a hardship in the

12   bookselling business.  And maybe we should ask him what it is.

13          MR. JAUREGUI:  I'm not quite sure what the issue is

14   Your Honor, so.

15          THE COURT:  Why don't you invite him up?

16          THE COURTROOM DEPUTY:  Mr. Decapua.  Jerry Decapua.

17          THE COURT:  Okay.

18          PROSPECTIVE JUROR:  Good afternoon.

19          THE COURT:  Good afternoon, is this a regional book

20   shop?

21          PROSPECTIVE JUROR:  Yes, it is.  Somebody has got to

22   be there to open it and close it and receive the shipping and

23   all of that stuff.

24          THE COURT:  You don't have any other employees?

25          PROSPECTIVE JUROR:  No, I'm the employee, I'm a

1   contract employee, so I don't get paid.

2         THE COURT:  Well, I know you don't get paid, but

3   that is not a basis for excusing you.

4         PROSPECTIVE JUROR:  My boss is 72 years old, and I

5   don't expect her to heft 50-pound boxes of books and do that

6   other stuff I do.

7     The other problem is she has a couple of times where she

8   has to be gone from the store, which means I cover her.  So

9   that's the problem.  The store has to stay open from 10 to 6.

10         THE COURT:  Okay.  Well, we know that tomorrow, for

11   example, since I'm going to be out, you will be able to help

12   her.

13         PROSPECTIVE JUROR:  Okay.

14         THE COURT:  Then that leaves Thursday and Friday.

15         PROSPECTIVE JUROR:  Yeah, she's going to be gone on

16   Friday.  We worked out a quid pro quo to do this today and I

17   would cover her on Friday.

18         THE COURT:  Okay.  Any other questions?

19         PROSPECTIVE JUROR:  Thank you.

20         MS. KIM:  We believe he should be excused.

21         MS. O'CONNOR:  We agree.

22         THE COURT:  Okay.  So we will excuse Mr. Decapua,

23   and that's all.  That covers it?

24         MS. KIM:  Yes.

25         MS. O'CONNOR:  Yes, Your Honor.

1           THE COURT:  Okay.  Thank you.

2                      (End of sidebar.)

3           THE COURT:  Okay.  So, for now we are going to

4    excuse the following people for cause:  Mr. Hamil, Mr. Stambuk,

5    Ms. -- our dentist -- Ms. Manzana, Ms. Law, Ms. Zacatenco, and

6    then finally, Mr. Decapua.

7           You may all report back to the jury assembly room and for

8    those of you who came up here to tell us about your conflicts,

9    it doesn't mean that you will not ultimately be excused, but

10   for now we don't think you have made a case to be excused for

11   cause.

12          So, the names I just mentioned, you may report back to the

13   jury assembly room downstairs, everyone else, please stay.

14          Okay.  So now we are going to call the first 12 in our

15   list to the jury box.  And then we will proceed to ask you some

16   questions.

17          THE COURTROOM DEPUTY:  Scarlett Pacheco,

18   P-a-c-h-e-c-o.  Scarlett Pacheco, please come forward.

19          Jonathan Goren.  G-o-r-e-n.  Jonathan Goren, please come

20   forward.

21          Mr. Goren, if you could have a seat next to Ms. Pacheco on

22   the first row.  Thank you.

23          Karla Jovel-Mancilla.  Karla J-o-v-e-l dash

24   M-a-n-c-i-l-l-a.

25          Dejorian Nitaljones.  N-i-t-a-l-j-o-n-e-s.

1          Janet Avery, A-v-e-r-y.  Janet Avery.

2          Rocio Verduzco.  V-e-r-d-u-z-c-o.  Rocio Verduzco.

3          Meagan Thompson-Mann.  T-h-o-m-p-s-o-n dash M-a-n-n.

4   Meagan Thompson-Mann.

5          Ms. Thompson-Mann, if you could actually start with the

6   second row all the way down.  Thank you.

7          Charmane Henderson.  H-e-n-d-e-r-s-o-n.  Charmane

8   Henderson.

9          Deisi Magallonperez.  M-a-g-a-l-l-o-n-p-e-r-e-z.

10          Michael Nakachi.  N-a-k-a-c-h-i.  Michael Nakachi.

11          Sara Garate.  G-a-r-a-t-e.  Sara Garate.

12          Kevin Liangcy.  L-i-a-n-g-c-y.  Kevin Liangcy.

13          Thank you.

14               THE COURT:  Okay.  Ms. Pacheco, we will begin with

15   you.  Can you tell us how you and the other adults in your

16   household are employed?

17               PROSPECTIVE JUROR:  We own a family party supply and

18   my dad works at a body shop.

19               THE COURT:  When you say "we" does that include

20   sisters, brothers?

21               PROSPECTIVE JUROR:  It includes my mom, my dad, my

22   sister, my brother, and myself.

23               THE COURT:  Okay.  And have you served on a jury

24   before?

25               PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Okay.  Then let's now go to Mr. Goren.
 2         Mr. Goren, could you tell us how you and the other adults
 3    in your household are employed?
 4              PROSPECTIVE JUROR:  I'm an attorney with the U.S.
 5    Securities and Exchange Commission.  My spouse is an editor at
 6    a news website.
 7              THE COURT:  Okay.  Have you served on a jury before?
 8              PROSPECTIVE JUROR:  I have not.
 9              THE COURT:  Okay.  And then let's go to
10    Ms. Jovel-Mancilla.
11              PROSPECTIVE JUROR:  My husband and I are both
12    elementary school teachers.
13              THE COURT:  Okay.  Have you served on a jury before?
14              PROSPECTIVE JUROR:  No.
15              THE COURT:  Is it Mr. Nitaljones?
16              PROSPECTIVE JUROR:  Yes.
17              THE COURT:  Tell me about yourself and the other
18    adults in your household.
19              PROSPECTIVE JUROR:  Right now, it's my brother and
20    I.  I'm a student, a junior, I'm actually unemployed right now.
21              THE COURT:  What kind of work have you done in the
22    past?
23              PROSPECTIVE JUROR:  I worked at State Farm as a
24    customer sales representative for about two months.
25              THE COURT:  Okay.  Anything else?
```

```
1                    PROSPECTIVE JUROR:  No.

2                    THE COURT:  And your brother, is he employed?

3                    PROSPECTIVE JUROR:  He is disabled.

4                    THE COURT:  Okay.  Was he previously employed?

5                    PROSPECTIVE JUROR:  No.

6                    THE COURT:  All right.  Have you been on a jury

7      before?

8                    PROSPECTIVE JUROR:  Never.

9                    THE COURT:  Okay.  Let's go to Ms. Avery.

10         Ms. Avery?

11                   PROSPECTIVE JUROR:  I'm the only adult in my

12     household.  I'm a secretary to a vice principal in a public

13     high school.

14         And I have never served on a jury.

15                   THE COURT:  Okay.

16         Is it Ms. Verduzco?

17                   PROSPECTIVE JUROR:  Verduzco, okay.

18         My dad is retired.  My mom is a stay-at-home mom.  And I

19     work as a respiratory therapist.  I have served on a jury

20     before.

21                   THE COURT:  Did the jury reach a verdict?

22                   PROSPECTIVE JUROR:  Yes.

23                   THE COURT:  Was it a criminal or civil case?

24                   PROSPECTIVE JUROR:  I don't remember.

25                   THE COURT:  Okay.  Were you satisfied with the
```

1    experience of your jury duty?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Okay.  And can you tell us a little bit

4    why, without getting into the case?

5              PROSPECTIVE JUROR:  The verdict at the end, I

6    regretted my decision.

7              THE COURT:  Okay.  Let me ask this:  What did your

8    dad do before he retired?

9              PROSPECTIVE JUROR:  Construction.

10             THE COURT:  Okay.  Thank you.

11        Okay.  Let's go to Ms. Thompson-Mann, I'm sorry, I can't

12    read my own writing.  Ms. Thompson-Mann.

13             PROSPECTIVE JUROR:  Hi, I am employed as a legal

14    assistant.  I'm also a final year JD candidate.

15        I live with my best friend, he's a court liaison officer

16    for the Santa Monica Police Department.  I have not served on a

17    jury before.

18             THE COURT:  Okay.  Have you had any employment as a

19    summer associate law clerk or something like that?

20             PROSPECTIVE JUROR:  I have been working as a legal

21    assistant for the past six and a half years.

22        I'm a part-time student.  So that has been -- my job has

23    been my summer work.

24             THE COURT:  What kind of practice are you working

25    in?

1              PROSPECTIVE JUROR:  Primarily commercial real estate

2    and some business law.

3              THE COURT:  Okay, But nothing in the criminal law

4    area?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  Okay.  All right.  Then let's go to

7    Ms. Henderson.

8         Ms. Henderson?

9              PROSPECTIVE JUROR:  Yes.  It's just me and my

10   younger son in the home.  I'm UC at a grocery story and I also

11   work security at the airport.

12        And my son -- well, now he was a full-time student, but

13   now he works for UPS.

14        Yes, I served in LA Airport Criminal Court.

15             THE COURT:  Okay.

16             PROSPECTIVE JUROR:  And they settled.

17             THE COURT:  All right.  Do you have any strong

18   positive or negative feelings about jury service based on that

19   experience?

20             PROSPECTIVE JUROR:  Not at all.

21             THE COURT:  All right.  Let's now go to -- I guess

22   it's Ms. Magallonperez.

23             PROSPECTIVE JUROR:  Yes.  I work -- it's a foam

24   company in shipping.  And I'm an assembler.

25        My husband is forklifter in the recycling.  And I have

```
 1    served on a jury before.
 2              THE COURT:  Do you recall was it a civil or criminal
 3    case?
 4              PROSPECTIVE JUROR:  It was criminal.
 5              THE COURT:  Did the jury reach a verdict?
 6              PROSPECTIVE JUROR:  Yes.
 7              THE COURT:  And did you come away with good or bad
 8    feelings about that experience?
 9              PROSPECTIVE JUROR:  It was good, a good experience.
10              THE COURT:  Okay.  And then Mr. Nakachi, I think you
11    are next.
12              PROSPECTIVE JUROR:  I'm a machinist, and I rent a
13    room from a landlord, and I'm not too familiar exactly what he
14    does for his job.
15         I have never served on a jury before.
16              THE COURT:  Okay.  Thank you.
17         Okay, Ms. Garate.
18              PROSPECTIVE JUROR:  I don't have much of a voice, so
19    I'm a part-time school teacher, and my husband is a wholesaler
20    for an international rig company.
21         And I wasn't sure if I should bring it up before, but
22    oddly enough, I'm actually Facebook friends with a sister of
23    one of the witnesses for this side, but we're really, really
24    distant friends.
25              THE COURT:  Okay.  Do you want to mention who that
```

```
 1   is, just so we all know?
 2            PROSPECTIVE JUROR:  I'm Facebook friends with Debra
 3   Singer, now Stewart, Ben Singer's sister.
 4            THE COURT:  Okay.  And how do you -- how often do
 5   you communicate with her?
 6            PROSPECTIVE JUROR:  Not often at all.  I dated her
 7   husband a long time ago.  So, that is how I know her.
 8        I can pass on the mic, and I haven't been on a jury
 9   before.
10            THE COURT:  All right.  We will take that up in a
11   minute.
12        Okay.  Mr. Liangcy?
13            PROSPECTIVE JUROR:  I'm a graphic designer and my
14   dad is an engineer, and my mom is stay-at-home wife.
15            THE COURT:  Okay.  Have you been on a jury before?
16            PROSPECTIVE JUROR:  No.
17            THE COURT:  Okay.  Let me -- all I want to do first
18   is see counsel at sidebar to see if we have a problem with
19   Ms. Garate.
20                        (Sidebar begins.)
21            THE COURT:  So what is your view?
22            MS. KIM:  The government believes as to Ms. Garate,
23   given the tenuous relationship or level of relationship and
24   sort of the background of the history of the relationship, we
25   don't believe she should be excused for cause.
```

1          MS. O'CONNOR:  We think she should be excused for

2     cause, Your Honor.

3          I think that from what I know what I have heard today

4     about Ben's call records he's making calls to his in-laws and

5     his family members.

6          I just don't want to take the risk that this witness will

7     -- her personal feelings and her personal relationship with the

8     Singer family could get involved one way or another.

9          We don't know what kind of relationship she had with Ben

10    Singer's current brother-in-law.

11         I think it just complicates things.  We would move to

12    strike her for cause.

13         THE COURT:  Okay.

14         Normally, I wouldn't, but I think in this case it is

15    appropriate to strike her and bring someone else up and avoid

16    any risk.

17         MS. KIM:  That's fine, Your Honor.

18         THE COURT:  Okay.

19              (End of sidebar.)

20         THE COURT:  Ms. Garate, we are going to thank and

21    excuse you and send you back to the jury assembly room, but

22    thank you very much for your time and your candor.

23         Okay.  Go ahead.

24         THE COURTROOM DEPUTY:  John Reuter, R-e-u-t-e-r.

25    John Reuter.

1          Mr. Reuter, it's the second row, fourth seat in from this

2     side.

3               THE COURT:  Okay.  Good afternoon.

4               PROSPECTIVE JUROR:  Good afternoon.

5               THE COURT:  Can you tell us how you and the other

6     adults in your household are employed?

7               PROSPECTIVE JUROR:  I'm retired, due to a back

8     injury and heart surgery and my wife is still working.

9               THE COURT:  Let's start again, what did you do

10    before you retired?

11              PROSPECTIVE JUROR:  Construction for 45 years.

12              THE COURT:  Okay.  How is your wife employed?

13              PROSPECTIVE JUROR:  She works for a group home for

14    girls.

15              THE COURT:  Okay.  What does she do there?

16              PROSPECTIVE JUROR:  She's assistant manager.

17              THE COURT:  Okay.  Have you served on a jury before?

18              PROSPECTIVE JUROR:  No, I have not.

19              THE COURT:  Okay.  Let me then proceed to ask the

20    assembled group some questions.

21         What I'm going to do is I'm going to ask questions to all

22    of you sitting in the box if you have -- I will let you know

23    whether I want you to raise your hand in the event you have an

24    affirmative response or a negative response as the case may be.

25         As for everyone sitting out in the courtroom audience,

1  please remember the questions.  If you need to jot them down,

2  go ahead and do that, because we want to move this as quickly

3  as possible.

4      Okay.  First of all, do you have any difficulty with your

5  language skills, hearing or sight or any medical problems that

6  could impair your ability to devote your full attention to this

7  trial?

8      Please raise your hand if the answer is yes.

9      Okay.  Mr. Reuter, what -- I know you have had the heart

10 surgery and everything, what do you have in mind?

11      PROSPECTIVE JUROR:  I had heart surgery, but I'm

12 hard of hearing now, and my health is not great.

13      THE COURT:  Well, we have earphones to assist you in

14 hearing.

15      PROSPECTIVE JUROR:  Okay.

16      THE COURT:  And obviously if you needed to take a

17 break, or something like that, we would let you do that, but

18 this is a very short trial so what I'm trying to understand is

19 do you have any limitations from a doctor or anything like that

20 which would prevent you from being a juror for a few days?

21      PROSPECTIVE JUROR:  No.

22      THE COURT:  Okay.  Anyone else?

23      If you were selected as a juror in this case, you will be

24 required to deliberate with 11 other jurors which will require

25 you to discuss the evidence and the law with one another.

```
1          Is there anything that leads to you believe that you would
2    be unable or unwilling to engage in those sort of discussions.
3    Please raise your hand if the answer is yes.
4          Okay.  Do you believe that law as prohibiting blackmail
5    and extortion should be abolished or not enforced?
6          Raise your hand if your answer is yes.
7          Okay.  Have you or a family member or a close friend ever
8    solicited, demanded, accepted or accepted so-called hush money?
9    Raise your hand if the answer is yes.
10         Okay.  Do you have any reservations or doubts on your
11   ability to be fair to both sides in this case charging someone
12   with violations of federal laws involving extortion?
13         Please raise your hand if the answer is yes.
14         Okay.  Mr. Reuter, can you hear us now?
15              PROSPECTIVE JUROR:  Yes, I can.
16              THE COURT:  Great.  Have any of you been a member of
17   or associated in any manner with a group, society, or
18   organization that advocates First Amendment rights or free
19   speech?
20         Please raise your hand if the answer is yes.
21         Okay.  Do any of you feel that the laws of this country
22   are unconstitutional or --
23              MR. JAUREGUI:  There was a hand, Your Honor.
24              THE COURT:  I apologize, why don't you tell us,
25   Ms. Thompson-Mann.
```

1          PROSPECTIVE JUROR:  I am a current member of the

2    ACLU.

3          THE COURT:  Okay.  What -- are you just a member or

4    are you active in its work?

5          PROSPECTIVE JUROR:  I am just a member, but I have

6    thought about working in connection with some of its voting

7    rights projects.

8          THE COURT:  Okay.  Thank you.  Anybody else?

9       Okay.  Do any of you feel that the laws of this country

10   are unconstitutional or unfair in any way?

11      Please raise your hand if the answer is yes.

12      Okay.  Do you believe that the government should not

13   prosecute non-violent cases?

14      Please raise your hand if the answer is yes.

15          PROSPECTIVE JUROR:  Could you repeat that?

16          THE COURT:  Yes.  Do you believe that the government

17   should not prosecute cases that do not involve violence?

18      Have you or any of your close friends or relatives ever

19   been arrested, charged with, or convicted of any crime?

20      Okay.  So now the question is let's start and see who

21   wants to speak about it pubically or who needs to come to

22   sidebar.

23      Let me start with you, Ms. Pacheco.  Can you tell us or do

24   you want to come over to sidebar?

25          PROSPECTIVE JUROR:  My little brother was

**UNITED STATES DISTRICT COURT**

```
 1    incarcerated for domestic violence.
 2              THE COURT:  Okay.  And was he tried and convicted or
 3    what happened?
 4              PROSPECTIVE JUROR:  Yeah.
 5              THE COURT:  Okay.  Do you have any strong feelings
 6    that he was treated fairly or unfairly by the criminal justice
 7    system?
 8              PROSPECTIVE JUROR:  Unfairly.
 9              THE COURT:  Unfairly?
10              PROSPECTIVE JUROR:  Yeah.
11              THE COURT:  Okay.  Do you think that that would
12    impact your ability to be fair and impartial in this case?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  Okay.  How long was your brother
15    incarcerated?
16              PROSPECTIVE JUROR:  A month.
17              THE COURT:  Okay.  Was that before or after his --
18    was he tried or did he enter a plea?
19              PROSPECTIVE JUROR:  He entered a plea.
20              THE COURT:  Okay.  And so this is after he entered
21    the plea?
22              PROSPECTIVE JUROR:  Yeah.
23              THE COURT:  Then was he on probation?
24              PROSPECTIVE JUROR:  Yeah, he's on probation.
25              THE COURT:  Okay.  Then I think the next hand up was
```

1    -- it's in Row 1.  I think we have Mr. Nitaljones.

2              PROSPECTIVE JUROR:  I had a cousin.

3              THE COURT:  Go ahead.

4              PROSPECTIVE JUROR:  I had a cousin, I'm not sure, to

5    be honest, what he did, because my dad never really told me,

6    but he was in jail for most of his life.  And he's out, and

7    back in.

8         So I think it was criminal, but I don't really know.

9              THE COURT:  Okay.  Well, do you know enough about it

10   to think that it's going to impact your ability to be fair and

11   impartial in this case?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  As far as you know, was he treated

14   unfairly by the system or do you have an opinion?

15             PROSPECTIVE JUROR:  I really don't know.

16             THE COURT:  Okay.  Then we have you, Mr. Natiljones.

17             PROSPECTIVE JUROR:  Yes, I have cousins in North

18   Carolina that my father knows, they got caught selling drugs,

19   and for most of their life, like, Pat, he has been in and out

20   of jail.  So, I don't have any -- I guess biases against that.

21   I feel like they were treated accordingly or fairly.

22             THE COURT:  Okay.  Do you visit them or did you

23   visit them while they were in jail?

24             PROSPECTIVE JUROR:  No, I live out here in

25   California, they live in North Carolina.  I have heard stories

**UNITED STATES DISTRICT COURT**

```
1    about them, but yeah.

2            THE COURT:  Okay.  Do people in your family suggest

3    they were treated unfairly?

4            PROSPECTIVE JUROR:  No.

5            THE COURT:  Okay.  Anyone else in the front -- that

6    is what I thought.

7        Okay, Ms. Verduzco.

8            PROSPECTIVE JUROR:  I had a first cousin that was --

9    spent seven years in prison for a DUI that killed two people.

10           THE COURT:  Okay.  Did you go to the trial or were

11   you involved in the case?

12           PROSPECTIVE JUROR:  I was involved in the trial and

13   in the case, and we visited him in prison in Chino.

14           THE COURT:  Do you think he was treated fairly?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  My question to you is do you think you

17   could be fair and impartial in this case?

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Okay.  Ms. Verduzco?

20           PROSPECTIVE JUROR:  Yes.  My daughter's father, he

21   was charged with a criminal crime, and I honestly do believe he

22   wasn't treated fairly.

23           THE COURT:  Okay.  And is he still in prison or was

24   he?

25           PROSPECTIVE JUROR:  No, no.  They settled out of
```

1    court, but the way the lawyer explained it, is basically his

2    word against the people, and it didn't look good for him.

3              THE COURT:  Okay.

4              PROSPECTIVE JUROR:  To me, it was unfair.

5              THE COURT:  Okay.

6         Do you think that would impact how you would view this

7    case?

8         In other words, could you be fair and impartial in this

9    case?

10             PROSPECTIVE JUROR:  Honestly, no, because it's one

11   person's word against the other and people bend the truth all

12   of the time to make it fit their life or their story.

13             THE COURT:  Okay.  I will take that up with counsel

14   then.

15        Back row, we had -- whose hands up in the back row?

16             PROSPECTIVE JUROR:  My uncle, he's been like in and

17   out like his whole life of prison.  And right now he's out, but

18   he's on probation.  Every time he went in, it was all

19   drug-related, drinking or causing a car wreck on the freeway.

20        And then my cousin, my little cousin, he's in prison right

21   now because he stabbed somebody.  And I don't think -- I don't

22   see any problems with the way they were treated.  I think they

23   were being treated fairly and impartial.

24        I don't have any problems being fair and impartial, Your

25   Honor.

1          THE COURT:  Do we have anybody else in the back row?

2          PROSPECTIVE JUROR:  Yes, a sibling done time, but

3   he's out now.  And he was charged according to the crime and

4   they would not -- it won't predict any way that I would be here

5   on a jury.

6          THE REPORTER:  Could you say that again?  I am not

7   sure I heard you.

8          PROSPECTIVE JUROR:  I'm sorry.  Sorry, a brother,

9   but he's released now, and he was, you know, charged and done

10  his time accordingly to the crime that he done.

11         THE COURT:  Okay.  Do you think he was treated

12  unfairly by the system?

13         PROSPECTIVE JUROR:  No, he was not.

14         THE COURT:  Do you think you could be fair and

15  impartial on this case?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Okay.

18         PROSPECTIVE JUROR:  Thank you.

19         THE COURT:  Anyone else?

20      Okay.  Let me just keep going, and then when I'm through

21  with these, we will see counsel at sidebar.

22      Okay.  Have you or any of your close friends or relatives

23  ever had favorable or unfavorable contact with law enforcement?

24  Please raise your hand if the answer is yes.

25      Okay.  So, let me start, if I can, with Mr. Natiljones?

1      Do you want to tell us?

2           PROSPECTIVE JUROR:  So my dad and my cousins, they

3    have had, I guess, favorable -- I should say unfavorable

4    contact with law enforcement.  Domestic violence on my dad's

5    side, and the drugs on my cousin's side.

6           THE COURT:  Okay.  What about you.  Have you had any

7    experience with law enforcement you consider good or bad?

8           PROSPECTIVE JUROR:  No.

9           THE COURT:  Okay.  So I take it you are talking

10   about contact your dad had or your cousin's had?

11      Are you telling us that that would not affect your ability

12   to be fair and impartial in this case?

13           PROSPECTIVE JUROR:  It would not.

14           THE COURT:  Okay.  Then I believe, and correct me,

15   Ms. Thompson-Mann, did you have your hand up?

16           PROSPECTIVE JUROR:  Could I have a sidebar?

17           THE COURT:  Sure.

18                     (Sidebar begins.)

19           PROSPECTIVE JUROR:  Hi.

20           THE COURT:  Wait.

21           PROSPECTIVE JUROR:  I was sexually assaulted in

22   2010.  I have a mixed experience with the police.

23      They were -- I would say, in general, they were very

24   professional, but I felt that in trying to get the case to go

25   forward, they pushed me.  They pushed me a little further than

1   I wanted to go.

2             THE COURT:  What do you mean, "they pushed you"?

3             PROSPECTIVE JUROR:  They wanted me basically to call

4   the man who had attacked me, and get him to admit that he had

5   done so.  I really kind of tore myself up to do that.

6   Ultimately, I felt I couldn't do it.  I felt they pushed me too

7   far at the time, but I think in general, that it was quite

8   good.

9       It was just that that one experience has kind of affected

10  how I feel about law enforcement, especially crimes in

11  particular.

12            THE COURT:  Well, this is not a sex crime, but the

13  question on the table is, with that experience --

14            PROSPECTIVE JUROR:  Yes.

15            THE COURT:  -- do you think you could be fair and

16  impartial in this case?

17            PROSPECTIVE JUROR:  Yes, I do.  I just wanted to be

18  completely honest.

19            THE COURT:  Anything else you want to ask her?

20            MS. O'CONNOR:  Not from the defense.

21            MS. KIM:  Not from the government.

22            THE COURT:  Okay.  Thank you.  Before you go away,

23  you can go -- sorry.

24      What about Ms. Verduzco?  She has to go based on her

25  answer.

1          MS. KIM:  Your Honor, we believe she should be

2    stricken for cause, given she said she could not be fair and

3    impartial.

4          THE COURT:  Yeah, I think that is it.

5          MS. O'CONNOR:  We agree.

6          THE COURT:  Okay.  So, let's do that one.

7      Okay.  Thank you.

8                        (Sidebar ends.)

9          THE COURT:  Okay.  Now, okay, have you or any of

10   your close friends or relatives ever filed a lawsuit or

11   complaint concerning the conduct of a law enforcement officer?

12   Raise your land if the answer is yes.

13         THE COURTROOM DEPUTY:  Can we get the microphone for

14   her?

15         PROSPECTIVE JUROR:  I'm sorry, I'm raising my hand

16   but not this question that you are asking, the previous one, I

17   would like to come to the sidebar also.

18         THE COURT:  Okay.

19         PROSPECTIVE JUROR:  Thank you.

20         MR. JAUREGUI:  Your Honor, it appears there were

21   other hands as well to that question.

22         THE COURT:  I know.

23                       (Sidebar begins.)

24         THE COURT:  Do you want to wait until everybody is

25   here?

```
 1        Okay.  Now, talk into here so she can hear.
 2             PROSPECTIVE JUROR:  My oldest son was killed on
 3   January the 1st of this year by the police.
 4             THE COURT:  Okay.  I'm very sorry.
 5             PROSPECTIVE JUROR:  Uh-huh.
 6             THE COURT:  Okay.  And I am assuming you believe
 7   that that was not at all justified?
 8             PROSPECTIVE JUROR:  No, I did not.
 9             THE COURT:  Okay.  And do you think that that
10   experience is going to make it impossible for you to be fair
11   and impartial on this case?
12             PROSPECTIVE JUROR:  No, it won't.
13             THE COURT:  Okay.  Are you sure?
14             PROSPECTIVE JUROR:  I'm sure.
15             THE COURT:  Okay.  Anything else you want to ask
16   counsel?
17             MS. O'CONNOR:  No.  Thank you.
18             THE COURT:  Okay.  Why don't you go back to the jury
19   box.
20             PROSPECTIVE JUROR:  It was Torrance Police.
21             THE COURT:  Torrance Police.  Okay, yes.
22        Thank you.  Is there anyone else in the back row who needs
23   to come to sidebar?
24        Okay.  Let's take first of all --
25             PROSPECTIVE JUROR:  Mr. Liangcy.  So two unfavorable
```

1  occurrences.  First, my house was broken into, and I was there

2  and it took law enforcement about an hour to show up.

3          MS. KIM:  Speak up, we can't hear.

4          PROSPECTIVE JUROR:  So two unfavorable

5  circumstances.  First one is my house was broken into while I

6  was still inside, and it took law enforcement about an hour to

7  get there.

8      And then the second occurrence as they pulled me over, it

9  looked like they were trying to force me into pulling over at a

10 no parking any time zone, but I pulled up further ahead and

11 then he just stayed there in his car for like 30 minutes and

12 then came up to me, and said this was a warning, you didn't

13 turn on your blinker.

14         THE COURT:  Turn on his blinker?

15         PROSPECTIVE JUROR:  So my thought is when I really

16 needed them they weren't there, and when I wasn't doing

17 anything they took too long.

18         THE COURT:  Okay.  Are you, as a result of that,

19 distrustful of all law enforcement?

20         PROSPECTIVE JUROR:  I have opinions, yeah.

21         THE COURT:  Okay.  And so, if a federal agent

22 testified in this case, you would have trouble with that

23 person?

24         PROSPECTIVE JUROR:  I might.

25         THE COURT:  Okay.

1          MS. O'CONNOR:  So, I'm sorry, I just wanted to make

2     it clear that this case doesn't involve local law enforcement.

3     It doesn't involve regular police officers like the ones you

4     had your negative experiences with.

5          It would just involve FBI agents.

6          Do you think you could be able to separate your experience

7     with local law enforcement and think of them as a different

8     situation than the FBI?

9          PROSPECTIVE JUROR:  I might not be able to, because

10    I work in advertising as well, and stories are told, and

11    whether it be law enforcements -- it's about the story that

12    they are telling.  I don't think I trust any of them.

13         THE COURT:  Okay.  We appreciate your candor.

14         I think he has to be excused.

15         MS. KIM:  The government agrees, he needs to be

16    excused.

17         MS. O'CONNOR:  We have no objection, Your Honor.

18         THE COURT:  Oh, now who do we have in the first row?

19    Does she need to come to sidebar?

20         THE COURTROOM DEPUTY:  Do you need to come to

21    sidebar?

22         PROSPECTIVE JUROR:  Jovel Mancilla, it was my

23    brother, 20 years ago, in high school he was racially profiled

24    by police officers on several occasions, once with friends of

25    ours and my mom had to come out and talk to the officer.

UNITED STATES DISTRICT COURT

1        But, I mean now, I have friends that are police officers.

2    I mean, you know, it's a different time.

3            THE COURT:  So you think you can be fair and

4    impartial?

5            PROSPECTIVE JUROR:  I believe so.

6            THE COURT:  Okay.  Any follow-up counsel?

7            MS. O'CONNOR:  Not from the defense.

8            MS. KIM:  Not from the government.

9            THE COURT:  Does that cover everybody?

10           THE COURTROOM DEPUTY:  Is there anyone else that

11   needs to come to sidebar?

12                       (Sidebar ends.)

13           THE COURT:  Okay.  Then why don't you go back.  What

14   I'm going to do at this juncture is thank and excuse a few of

15   you sitting in the box, so you can report back to the jury

16   assembly room and we can move ahead.

17       First of all, we're going to thank and excuse

18   Ms. Verduzco.

19       And then we're going to thank and excuse Mr. Liangcy.

20       Counsel, is that it?  I think so.

21           MS. KIM:  Yes, Your Honor.

22           MS. O'CONNOR:  Yes, Your Honor.

23           THE COURT:  So let's call up people to replace those

24   two jurors.

25           THE COURTROOM DEPUTY:  Abraham Rosenberg.

1  R-o-s-e-n-b-e-r-g, Abraham Rosenberg.

2      If you could come forward and you are going to have a seat

3  in the first row, third seat in.

4      Camille Roberts, R-o-b-e-r-t-s.  Camille Roberts.

5      Do we have the microphone for Mr. Rosenberg?  Thank you.

6          THE COURT:  Okay.  Let me start with you,

7  Mr. Rosenberg.  Tell me how you and the other adults in your

8  household are employed?

9          PROSPECTIVE JUROR:  It's just me, Your Honor.  I am

10  a writer.

11          THE COURT:  Okay.  What kind of writing do you do?

12          PROSPECTIVE JUROR:  I write primarily broadcasts and

13  digital online materials for non-profits.

14          THE COURT:  Okay.  And have you served on a jury

15  previously?

16          PROSPECTIVE JUROR:  I have.

17          THE COURT:  Civil or criminal?

18          PROSPECTIVE JUROR:  Both.

19          THE COURT:  Did the jury reach verdicts in those

20  cases?

21          PROSPECTIVE JUROR:  We did.

22          THE COURT:  You were happy in your jury experience?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Do you recall the questions I asked

25  earlier?

```
 1              PROSPECTIVE JUROR:  Yes.
 2              THE COURT:  Do you need to bring anything to our
 3    attention?
 4              PROSPECTIVE JUROR:  May I come forward?
 5              THE COURT:  Sure.
 6                        (Sidebar begins.)
 7              PROSPECTIVE JUROR:  Hello, Your Honor.
 8              THE COURT:  Wait for counsel to come.
 9              PROSPECTIVE JUROR:  I didn't want to make a speech
10    in front of people, but one of the questions is about being
11    fair or unfair.
12        I happen to believe that certain offenses shouldn't put
13    people in jail.
14              THE COURT:  Right.
15              PROSPECTIVE JUROR:  If you are an addict and you are
16    not stealing and you are not selling, I don't think you should
17    go to jail for possession.  I think you should go into a
18    treatment program.
19              THE COURT:  Okay.  Do you think that belief is going
20    to prevent you from being fair and impartial in this case?  It
21    doesn't involve any drug usage or anything like that.
22              PROSPECTIVE JUROR:  No.
23              THE COURT:  Anything else you want to bring to our
24    attention?
25        Okay.  Then why don't you go back to the jury box.
```

```
 1                    PROSPECTIVE JUROR:  Okay.
 2                    MS. O'CONNOR:  We have no issue with Mr. Rosenberg.
 3                    MS. KIM:  The government has no issue.
 4                    THE COURT:  Thank you.  Okay.  So now Ms. Roberts,
 5      why don't you tell us how you and the other adults -- you need
 6      the microphone -- are employed in your household?
 7                    PROSPECTIVE JUROR:  My mom is retired, but she was a
 8      librarian at the Getty Center, and my dad is an expert witness.
 9      He testifies in court cases.
10          And I'm a sophomore at Chapman University, but I also
11      freelance with theatre-type jobs.
12                    THE COURT:  Okay.  Let's start at the beginning.
13      When you say your father is an expert, what kinds of subjects
14      does he testify on?
15                    PROSPECTIVE JUROR:  Mostly economics.
16                    THE COURT:  Okay.  Is he with a litigation firm?
17                    PROSPECTIVE JUROR:  Yes, I don't know the name of
18      the firm.
19                    THE COURT:  What?
20                    PROSPECTIVE JUROR:  Do you need the name of the
21      firm?
22                    THE COURT:  Sure.
23                    PROSPECTIVE JUROR:  Phillips Factor and Company.
24                    THE COURT:  Okay.  Have you been on a jury before?
25                    PROSPECTIVE JUROR:  No.
```

1          THE COURT:  Do you recall the questions I asked this

2   morning?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Is there anything you need to bring to

5   our attention?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  I'm going to go on and move onto the

8   next question addressed to all of you.

9      Have you or any of your close friends or relatives ever

10  filed a lawsuit or complaint concerning the conduct of a law

11  enforcement officers?

12     Please raise your hand if the answer is yes.

13     Okay.  Do you believe you or any of your close friends or

14  relatives have ever been falsely accused of committing a crime?

15  Raise your hand if the answer is yes.

16     Do you think that law enforcement or the criminal justice

17  system is not fair and needs to be changed?

18     Raise your hand if the answer is yes.

19     Do any of you think that law enforcement or the criminal

20  justice system treats certain individuals more harshly than

21  others?

22     Please raise your hand if the answer is yes.

23     Okay.  Let me start with you, Mr. Goren, can you speak

24  about that from there?

25          PROSPECTIVE JUROR:  Yes, Your Honor, nothing

1    personally affects me, but just the things I have read about

2    especially recently about disparate treatments of different

3    individuals, different races and ethnicities.  That was

4    something on my mind.

5                THE COURT:  Do you think that is going for affect

6    your ability to be fair and impartial here?

7                PROSPECTIVE JUROR:  No.

8                THE COURT:  Ms. Thompson-Mann?

9                PROSPECTIVE JUROR:  My answer is the same as

10   Mr. Goren.  It's really from my reading especially over the

11   past few years about certain races being treated differently.

12       But I don't think in this circumstance it would affect my

13   judgment.

14               THE COURT:  Okay.  Anyone else with that opinion?

15   Yes, okay.  Do you want to tell us about it?

16               PROSPECTIVE JUROR:  It's just the same, I agree.  My

17   husband was watching a documentary, and I was just in and out,

18   and it seemed that that opinion exists, so I agree with them.

19               THE COURT:  Okay.  Anyone else?

20       Okay.  Have you or any of your close relatives, or friends

21   had any contact with federal agents and police officers

22   including the FBI other than what you have previously described

23   to us either from the box or at sidebar?

24               PROSPECTIVE JUROR:  Your Honor, I just wanted to

25   reiterate.  I work for the Securities and Exchange Commission

UNITED STATES DISTRICT COURT

1   so I'm part of the federal law agencies.

2           THE COURT:  I understand that, okay.  And in the

3   course of this case, you are going to hear testimony from FBI

4   agents.

5       Is there anything you have experienced, seen, heard or

6   read about the FBI or any other federal agents here or the

7   police department that would prevent you from fairly assessing

8   the credibility of the law enforcement officers who will be

9   testifying?

10      Okay.  I think our specific question to you, Mr. Goren is

11  do you believe you would be inclined, based on your employment

12  by the SEC, to assume that federal law enforcement agencies

13  have greater credibility than other people just because they

14  are law enforcement officers?

15          PROSPECTIVE JUROR:  No, I wouldn't make that

16  assumption.

17          THE COURT:  Okay.  Is there anything about the way

18  the FBI or any other law enforcement agency conducts

19  investigations that would make it difficult for you to render a

20  fair and impartial verdict in this case?

21      Please raise your hand if the answer is yes.

22      Okay.  Anyone?  No.

23      Do you have any feelings, regarding the criminal justice

24  system, generally, that might affect your ability to consider

25  the evidence in this case fairly and impartially and to base

1    your verdict only on the evidence presented in this case?

2         Raise your hand if the answer is yes.

3         Okay.  We have talked about the witnesses, and I guess my

4    question one more time is do you know or are you familiar with

5    any of the following individuals who may be witnesses in this

6    case?

7         Do you recall those names that were read to you at the

8    beginning of the case by each side?

9         Okay.  During the course of this case, you will hear about

10   allegations of physical and sexual assault.

11        Is there anything about a case involving sexual

12   allegations that would affect your ability to consider the

13   evidence in this case fairly and impartially and to base your

14   verdict only on the evidence presented in this case?

15        Okay.  Anyone else I know we have -- okay.  I think unless

16   you have more to add, Ms. Thompson-Mann, I think we know what

17   you are talking about.

18        Does anyone need any further followup with her?

19             MS. O'CONNOR:  No, Your Honor.

20             THE COURT:  Government?

21             MS. KIM:  Your Honor, may we approach?

22             THE COURT:  Yes.  It may be necessary for us to ask

23   you to come over and rejoin us, Ms. Thompson-Mann, but let me

24   confer with counsel first.

25                       (Sidebar begins.)

1          MS. KIM:  Your Honor, earlier when a question was

2     asked a juror that she stated she had been a victim of sexual

3     assault, and she said she would be fair and impartial, this

4     question goes to whether her experiences would lead her not to

5     be fair and impartial.  I think a line of inquiry into that

6     needs to be made.

7          MS. O'CONNOR:  I agree.  We agree, Your Honor.

8          THE COURT:  Okay.  Could you come over again, sorry

9     to ask you to do that.

10          MS. KIM:  Could we have a five-minute bathroom

11     break?

12          THE COURT:  Okay.  So here is what we want to know.

13     Obviously, you are familiar with what happened to you.

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  In this case, and I'm going to let the

16     parties correct me, one of the questions or allegations is that

17     not the defendant, but his wife, was asked to give a nude

18     massage.

19        The next problem was that there was --

20          PROSPECTIVE JUROR:  Do you have a tissue?

21          THE COURT:  Yeah, we do.

22          PROSPECTIVE JUROR:  I'm so sorry.

23          THE COURT:  It is unclear that any sexual assault

24     occurred, but there are allegations to that effect.  And that

25     set of facts underlies the ultimate claims in this case.

**UNITED STATES DISTRICT COURT**

1       So our question to you is do you think you would be so

2  affected by those sets of allegations that it would affect your

3  ability to evaluate the evidence fairly and impartially?

4            PROSPECTIVE JUROR:  I think it would.  That's very

5  hard for me to say, because I really, you know --

6            THE COURT:  I understand.

7            PROSPECTIVE JUROR:  I really want to -- I have a

8  fair heart here, but I just don't think I can.

9            THE COURT:  That's fair.  We appreciate your honest

10  answer, okay.

11       So why don't you get your things and go back to the jury

12  assembly room.

13       Do we have time to call another juror or do we have to do

14  this right now?

15                        (Sidebar ends.)

16            THE COURT:  We're going to thank and excuse

17  Ms. Thompson-Mann.  I think we need to take a very brief

18  bathroom break, so ladies and gentlemen, please don't talk to

19  one another about the case or any of the questions I have

20  asked, but we will take maybe a ten-minute recess.

21       If you need to go to the restroom, obviously, please do

22  so.  If you want to stay seated here, you can do that.  But

23  whatever you do, please return to the seat you now occupy.

24            THE COURTROOM DEPUTY:  All rise.

25       (PROSPECTIVE JURY EXITS THE COURTROOM AT 3:16 P.M.)

**UNITED STATES DISTRICT COURT**

```
 1              THE COURTROOM DEPUTY:  Ten minutes.
 2                       (Afternoon recess.)
 3              THE COURTROOM DEPUTY:  Counsel, are we ready?
 4         Please come to order.  This Court is again in session.
 5    Shall I call the next person?
 6              THE COURT:  Yes, please.
 7              THE COURTROOM DEPUTY:  Marie Philman.
 8    P-h-i-l-m-a-n.  Marie Philman, if you could have a seat and you
 9    could go through that end, second row, first seat on that end.
10              THE COURT:  Ms. Philman, good afternoon.
11              PROSPECTIVE JUROR:  Good afternoon.
12              THE COURT:  Can you tell us how you and the other
13    adults in the household are employed?
14              PROSPECTIVE JUROR:  I'm a PE teacher at a private
15    school, and my partner works at a financial firm.
16              THE COURT:  Okay.  Have you served on a jury before?
17              PROSPECTIVE JUROR:  Yes.
18              THE COURT:  Civil or criminal?
19              PROSPECTIVE JUROR:  Both.
20              THE COURT:  Did you reach verdict?
21              PROSPECTIVE JUROR:  Yes.
22              THE COURT:  Were you satisfied with the experience?
23              PROSPECTIVE JUROR:  I was.
24              THE COURT:  Do you recall the questions I asked this
25    morning?
```

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Is there anything you need to bring to

3     our attention?

4          PROSPECTIVE JUROR:  I do have a sibling who is in

5     prison at the moment.

6          THE COURT:  Okay.  Did that -- are you able to talk

7     about it or are you going to talk about it at sidebar?

8          PROSPECTIVE JUROR:  I can talk about it, save you

9     the sidebar.

10          THE COURT:  Can you tell us was that pursuant to a

11     guilty plea or trial?

12          PROSPECTIVE JUROR:  It went to trial and he was

13     guilty.

14          THE COURT:  Okay.  And do you think he was treated

15     fairly by the system?

16          PROSPECTIVE JUROR:  For the most part.  I thought

17     the sentencing was a little rough, but, yes.

18          THE COURT:  Okay.  Do you think that experience is

19     going to prevent you from being fair and impartial on this

20     case?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  All right.  Let me proceed on with my

23     questions for everybody.

24      First of all, the potential punishment for the offense

25     charged in the indictment is a matter that should never be

1    considered by the jury in any way in arriving at an impartial

2    verdict as to the guilty or innocent of the accused.

3         Will each of you be able to conduct your duties as jurors

4    in this case without speculating about or being influenced in

5    any way by whatever punishment may or may not be imposed in

6    this case?

7         If you think you are going to have difficulty with that,

8    please raise your hand.

9         Okay.  There are some people who for moral, ethical, or

10   religious reasons may find it difficult or uncomfortable to

11   pass judgment on the conduct of others.

12        Is there any one of you who hold such beliefs or might be

13   affected by such beliefs?

14        Please raise your hand if the answer is yes.

15        Irrespective of your personal feelings about any issue

16   that may arise in this case, will you follow the law as the

17   Court instructs you to do during this case?

18        If you don't think you can do that, please raise your

19   hand.

20        Okay.  Knowing what you now know about this case, do you

21   have any reservations about your ability to hear the evidence,

22   deliberate, and return a fair and impartial verdict?

23        Please raise your hand if you do.

24        Okay.  Now let me ask a few more questions and then I

25   promise you, we will move ahead as best we can.

1        First of all, do any of you think people file too many

2   lawsuits?

3        Please raise your hand if the answer is yes.

4        Okay.  Do you want to tell us your views, Ms. Avery?

5   Let's get you the microphone.

6             PROSPECTIVE JUROR:  I'm sorry, just generally

7   speaking.

8             THE COURT:  Okay.  Well, tell us a little bit about

9   your opinion in that regard.

10       Is there a particular kind of lawsuit that you think has

11  been filed too much?

12            PROSPECTIVE JUROR:  Well, I have been a victim of a

13  car accident.  I have known other people that have been victims

14  of car accidents.  I think it's just a little bit -- always

15  bringing lawyers in when it could be settled out, you know,

16  talking about the insurance companies.

17       My father was an insurance agent, so I have a lot of

18  experience with that.

19            THE COURT:  Okay.  Do you hold that view with

20  respect to prosecutions brought by the government?

21            PROSPECTIVE JUROR:  No.

22            THE COURT:  Any other kind of lawsuit that you think

23  is filed too often?

24            PROSPECTIVE JUROR:  No.

25            THE COURT:  Okay.  Now, in this case, the alleged

1    victim of extortion is an entertainer by the name of Andy

2    Grammer.

3         Are any of you familiar with Mr. Grammer?

4         Please raise your hand if you have heard of him, first of

5    all?

6         Okay.  Now.  Let me just suggest the basics, Mr. Goren,

7    tell us what you know about Mr. Grammer?

8              PROSPECTIVE JUROR:  Yeah, I just know the name and

9    maybe heard a handful of his songs on the radio.

10             THE COURT:  Okay.  Can you -- do you ascribe

11   yourself as a fan or just that you know about him?

12             PROSPECTIVE JUROR:  Just aware of the name.

13             THE COURT:  Okay.  Do you think you would be able to

14   evaluate his testimony in the same way you would evaluate any

15   other witness in this case?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Okay.

18        Now, I know that Ms. Roberts you had your hand up, right?

19   How are you familiar with Mr. Grammer?

20             PROSPECTIVE JUROR:  I used to listen to his music in

21   high school.

22             THE COURT:  Okay.  Would you describe yourself as a

23   fan?

24             PROSPECTIVE JUROR:  Not really any more.  I still

25   like his music, I just don't listen to it that much.

1          THE COURT:  Do you think the fact that he is a

2   witness in this case would impact your ability to evaluate his

3   testimony in the same way you would evaluate any other

4   witness's testimony?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  Okay.  Any other hands on Mr. Grammer?

7      Okay.  During this trial, you will hear evidence of sexual

8   assault allegations.

9      In order to believe that such an allegation is true, would

10  you need to see physical evidence of an assault?

11     Raise your hand if the answer is yes.

12     Okay.  Why don't you tell us, Mr. Nakachi, what --

13         PROSPECTIVE JUROR:  Just -- I think by saying, if

14  you are going by somebody's word, it's too much to be putting

15  that on somebody.  I would have to see, like, maybe like

16  medical, you know, like some sort of from a doctor or something

17  I would like to hear from a doctor or the doctor's opinion

18  that, you know, that the person was sexually assaulted.

19         THE COURT:  Okay.  Well, let's be clear.  You are

20  acquainting sexual assault with some form of rape?

21         PROSPECTIVE JUROR:  Like, battery also.

22         THE COURT:  Battery.

23         PROSPECTIVE JUROR:  Yeah, I would like to see

24  bruises or something on the body.  You guys wouldn't be able to

25  show none of that, but I'm just saying -- I don't know, I guess

1    when the evidence shows, I would have to go with that.

2              THE COURT:  Okay.

3         All right.  You also hear that the woman who claims that

4    she was sexually assaulted was in the business of giving nude

5    massages.

6         Are you less likely to believe the testimony of someone

7    who engaged in that kind of business?

8         Raise your hand if the answer is yes.

9         Okay.  At least one of the witnesses in this case will be

10   a lawyer.

11        Would you tend to believe the testimony of a lawyer more

12   than you would the testimony of a non-lawyer by virtue of his

13   or her profession?

14        Raise your hand if the answer is yes.

15        And just to be sure I'm asking each of you -- if a lawyer

16   were to testify, would you evaluate the lawyer's testimony by

17   the same standards that you would evaluate anyone else's

18   testimony?

19        If the answer is no, if you think because you don't like

20   lawyers or you do like lawyers, you would treat a lawyer

21   differently, raise your hand.

22        Okay.  All right.  Now I'm going to go back to the

23   question I asked previously.

24        Based on what you now know about this case, is there

25   anything that would cause to you have reservations about your

1    ability to hear the evidence, deliberate, and return a fair and

2    impartial verdict?

3         Raise your hand if the answer is yes.

4         Okay.  At this juncture, may I see counsel at sidebar?

5                        (Sidebar begins.)

6              THE COURT:  Do we have any followup?

7              MS. O'CONNOR:  Can I would ask for a followup on two

8    jurors?

9         The first is Juror Number 12, and he was the juror who

10   raised his hand in response to the question about sexual

11   assault.

12             THE COURT:  You mean Nakachi, he's in seat 10.

13             MS. O'CONNOR:  But he's Juror Number 12 on our list.

14             THE COURT:  Got it.  I know what he said.

15             MS. O'CONNOR:  I would want followup, there is an

16   allegation -- the client made an allegation of a sexual

17   assault, and there is no doctor's notes, there are no photos of

18   any bruises, and I think that it seems like without those

19   things he would have already made up his mind as to the

20   validity of our client's allegations, and so it would be almost

21   like he just wouldn't believe them right off the bat.

22        In fact, he said so, so I move to strike him for cause.

23             MS. KIM:  Your Honor, I think there must be a

24   sidebar with Juror 10, so we could flesh out what his views

25   really are and for him to give more information about the

1    allegations.

2              THE COURT:  Besides Nakachi, who else?

3              MS. O'CONNOR:  Can the juror seated in seat No. 12.

4              THE COURT:  That is Roberts?

5              MS. O'CONNOR:  Yes, Ms. Roberts.  She described

6    herself as having listened to Mr. Grammer's music in high

7    school.  She's now in college, so that was recently.

8         She said that she would evaluate his testimony the same

9    but I think more needs to be explored than that.

10        I think with -- especially in regards to Mr. Grammer's

11   reputation for being the total opposite and being, you know,

12   respecting women, and all of the things that he says he did,

13   she would have a preconception about his propensity to engage

14   in the conduct that my client is charging him with.

15        So it would be questions about prejudging the merits of my

16   client's lawsuit, based on what she knows about Andy Grammer

17   and his reputation of music.

18             THE COURT:  I can ask generalized questions at

19   sidebar, I think.

20        Let's bring Mr. Nakachi over first.

21             THE COURTROOM DEPUTY:  Mr. Nakachi, if you could

22   come forward.

23             THE COURT:  Okay.  Here is our dilemma, and maybe

24   counsel can say it better than I.

25        In this case, there will be allegations as I mentioned

1    that there was a nude massage, that the Entertainer or the

2    person who had the massage, who is maybe the Manager, rather

3    than the Entertainer, made demands for sexual favors, which

4    were declined.

5         There are allegations that an altercation followed and

6    there was a fight and disagreement, which led to the demands

7    regarding extortion in this case.

8         We do not have medical evidence of a sexual assault.  We

9    do not have DNA evidence.  We do not have a rape kit.  We don't

10   even know if those things occurred, that is one of the

11   questions.

12        So, what we're trying to understand is what you mean when

13   you say you need medical evidence, because this is not going to

14   be your typical case where there was a rape or sexual assault.

15        There would be a contention that there was one, but no one

16   is going to be deciding whether there was sexual assault or a

17   rape.

18             PROSPECTIVE JUROR:  Okay.  It is basically just

19   going to be one person's side and the other person's side or

20   were there other witnesses or something like that?

21             THE COURT:  There is going to be one person's side

22   and the other person's side, although, there may be, you know,

23   a witness to the fact that there was a claim of assault.

24             PROSPECTIVE JUROR:  Okay.  I guess I would have to

25   listen to the claims first, but it won't affect my judgment

```
1    either, for sure, no.
2        I was just -- when I raised my hand I just wanted to know
3    if this was going to be basically from one person and the other
4    person or whether there was going to be evidence of like a
5    witness or something that would be there, too, or just going by
6    somebody else's word and the other person's word.
7                THE COURT:  Well, that may be the problem here.
8                PROSPECTIVE JUROR:  Okay.
9                THE COURT:  I'm going to see if -- the person who
10   claims that there was an attempt to assault her will not be
11   testifying.
12               PROSPECTIVE JUROR:  Okay.
13               THE COURT:  It is somebody else who responded having
14   heard about that claim.
15               PROSPECTIVE JUROR:  Okay.
16               THE COURT:  So now the question on the table is
17   maybe the parties want to clear this up for me and say it more
18   clearly, but I don't want to preview the entire case, but I
19   want you to understand that at the end of the day, you will not
20   be required to reach a verdict as to whether or not there was a
21   sexual assault.
22               PROSPECTIVE JUROR:  Okay.
23               THE COURT:  You will not be required to reach a
24   verdict as to whether there was a rape.
25               PROSPECTIVE JUROR:  Okay.
```

```
 1              THE COURT:  The question here is did someone engage
 2      in extortion.
 3              PROSPECTIVE JUROR:  Okay.  So that's basically what
 4      the whole thing is right there, okay.
 5          Well, then, I guess, I'm good with that, I can be still a
 6      candidate.  That would not mess up my judgment or anything like
 7      that.
 8              THE COURT:  Okay.  Do you have any questions?
 9              MS. O'CONNOR:  I do.  Just to be clear we're on the
10      same page, my client accused somebody of sexual assault
11      sexually assaulting his wife.  You won't see doctor's notes.
12      You won't see any physical evidence.
13          The question will be whether that accusation, because it
14      was false, is extortion.
15          Would you tend to judge whether that accusation is true or
16      false based on the lack of medical evidence?
17              PROSPECTIVE JUROR:  I would be able to judge, yes.
18      I would be fair about it, too.  And it won't be a problem, it
19      won't.
20              THE COURT:  In other words, what we're trying to
21      establish, there is no medical evidence in the case.
22              PROSPECTIVE JUROR:  I could still come to a
23      decision.  Whatever you guys are going to show me and stuff, I
24      will be able to come to a judgment for you guys, a fair
25      judgment.
```

1          THE COURT:  Do you have anything you want to ask

2    him?

3          MS. KIM:  No, Your Honor.

4          THE COURT:  I think he stays.

5          MS. O'CONNOR:  I think we agree, Your Honor.

6          THE COURT:  Okay.  You can go back to the jury box.

7       Okay.  Now, we need -- CJ, we need Ms. Roberts.

8          THE COURTROOM DEPUTY:  Ms. Roberts.  If you could

9    come forward to sidebar.

10         THE COURT:  No, you can go back.  You can come

11   forward.

12      Okay.  Hello.  So we have the following question for you

13   since you were once a fan of Mr. Grammer even though you may

14   not be an avid fan now.

15      Do you have any understanding about his reputation?

16         PROSPECTIVE JUROR:  Not really, I just listened to

17   his music.

18         THE COURT:  Did you ever hear he was religious?

19         PROSPECTIVE JUROR:  No.

20         THE COURT:  Did you ever hear he would disapprove of

21   infidelity?

22         PROSPECTIVE JUROR:  No.

23         THE COURT:  Did you -- did you learn anything about

24   his person?

25         PROSPECTIVE JUROR:  No, I didn't learn anything

1    about him.

2        I just listened to his music.

3            THE COURT:  Why did you stop listening to his music?

4            PROSPECTIVE JUROR:  I just listened to different

5    music, I guess.  Nothing personal against him, I just wasn't as

6    interested.

7            THE COURT:  Okay.  Anything further?

8            MS. O'CONNOR:  No.

9            MS. KIM:  Not from the government.

10           MR. JAUREGUI:  Just so the record is clear, I don't

11   believe she said she was a fan.  She said, I just listened to

12   his music.

13           THE COURT:  Okay.  I probably overstated it, but it

14   seems she doesn't have any preconception regarding any image he

15   projects, which would be relevant.

16           MR. JAUREGUI:  Thank you, Your Honor.

17           THE COURT:  So before you go away, do very have any

18   challenges for cause?

19           MS. KIM:  I believe the first challenge was the

20   government would like to thank and excuse Juror Number 8.

21           THE COURT:  Is this for cause?

22           MS. KIM:  No, no, no, sorry.

23           THE COURT:  Do you have any challenges for cause and

24   then we will start with the preemptories.

25           MS. O'CONNOR:  No more cause challenges.

1          THE COURT:  Now, we will go to preemptories.

2      Okay, Ms. Kim, No. 8?

3          MS. KIM:  We would like to thank and excuse Juror

4  Number 8.

5      I believe based on her answers to the questions, she has a

6  difficult time communicating clearly, and the government is

7  concerned that she will have a hard time deliberating with

8  other jurors.

9          MS. O'CONNOR:  Well, I would note for the record

10 that Juror Number 8 is African-American.

11         THE COURT:  She is.

12         MS. O'CONNOR:  I didn't notice any trouble with her

13 communicating.

14         MS. KIM:  Your Honor, the government disagrees.

15 When she was answering questions, she was having a hard time

16 discussing issues, and she was having a hard time explaining

17 her answers or at least communicating them in a clear manner.

18         MR. JAUREGUI:  In addition, Your Honor, there was a

19 moment where she said she sort of forgot where she was, and it

20 was like she was on the telephone or something like that.

21         THE COURT:  I heard her say all of those things, but

22 I frankly don't think she exhibited any real disability.

23     Her communication skills are not in the Queen's English,

24 to say the least, but I don't think that is a problem.

25     I think you are going to have to think long and hard

1    before you strike another African-American juror.

2            MS. KIM:  Your Honor, we believe that that

3    assessment is unfair to the government.

4        The government saved its basis for its challenge because

5    it wasn't, you know, necessarily background of color, it was

6    because of confused answering.

7            THE COURT:  I agree that that was the basis of your

8    challenge.  All I'm saying you have a right to make a

9    preemptory challenge.  You don't really need a reason to make

10   that challenge, but to the extent that you were telling me that

11   challenge is based on her lack of being articulate and things

12   like that, I don't really think that that is a particularly

13   strong basis, but I understand that you may have a different

14   perception of what she said than I.

15           MS. O'CONNOR:  We would exercise our first

16   preemptory on Ms. Roberts, Juror Number 12.

17           THE COURT:  Okay.  Does the government have anyone

18   else at this point or do you want to wait?

19           MR. JAUREGUI:  A moment, Your Honor.  Josh Jauregui

20   Your Honor, the government would like to thank and excuse Juror

21   No. 1.

22           THE COURT:  Okay.  That is Pacheco.  Do you have

23   anyone else?

24           MS. O'CONNOR:  Not at this time, Your Honor.

25           THE COURT:  We need to get three new people.

```
1                    (Sidebar ends.)
2           THE COURT:  Okay.  So at this time we would like to
3    thank and excuse Ms. Henderson, Ms. Roberts, and Ms. Pacheco.
4    You may all report back to the jury assembly room.  Thank you
5    for all of your time today.
6           THE COURTROOM DEPUTY:  Eric Macias.  M-a-c-i-a-s.
7    Eric Macias.  Mr. Macias, you are going to have a seat in the
8    second row, second seat from that side.
9        Evelyn Campos.  C-a-m-p-o-s.  Evelyn Campos.
10       Ms. Campos, you are going to have a seat on the second row
11   third seat from this side.
12       Shawn Gleason.  G-l-e-a-s-o-n.  Shawn Gleason.  First
13   seat.  First row.  Thank you.
14       Do we have the microphone for Mr. Macias?
15          THE COURT:  Okay.  Mr. Macias, can you tell us how
16   you and the other adults in your household are employed?
17          PROSPECTIVE JUROR:  I'm a manager with the security
18   firm, and my wife is a nanny.
19          THE COURT:  Have you been on a jury previously?
20          PROSPECTIVE JUROR:  No, never.
21          THE COURT:  Do you remember the questions I asked
22   this morning?
23          PROSPECTIVE JUROR:  Yes.
24          THE COURT:  Is there anything you should bring to
25   our attention?
```

**UNITED STATES DISTRICT COURT**

1          PROSPECTIVE JUROR:  I have a friend of mine that was

2     charged with resisting arrest.

3        I was in the vehicle when it happened.  I did advise him

4     not to resist arrest, I don't think it was an unfair or

5     impartial ruling, and I don't think it will affect my position

6     in the trial.

7          THE COURT:  Okay.  Let's go to Ms. Campos.

8          PROSPECTIVE JUROR:  I work for Wal-Mart.  My husband

9     works for FEDEX, and he's actually going to school for a

10    pharmacy technician.

11         THE COURT:  Okay.  Have you served on a jury before?

12         PROSPECTIVE JUROR:  No, I haven't.

13         THE COURT:  Do you recall the questions I asked?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Is there anything you need to bring to

16    our attention?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  Okay.  Mr. Gleason, let's go to him.

19    How are you and the other adults in the household employed?

20         PROSPECTIVE JUROR:  Both my parents are retired.

21        My brother works for a used auto parts company, and I'm a

22    mailman at the post office.

23         THE COURT:  Okay.  What did your parents do before

24    they retired?

25         PROSPECTIVE JUROR:  Both accountants.

1          THE COURT:  Okay.  Have you served on a jury before?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Do you recall my questions from the

4     morning?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Is there anything you need to bring to

7     our attention?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Counsel, may I see you at sidebar?

10                    (Sidebar begins.)

11          MS. O'CONNOR:  It's our turn, Your Honor.

12          THE COURT:  First of all, challenges for cause.

13          MS. O'CONNOR:  None from the defense.

14          THE COURT:  We're back to the defense.

15          MS. O'CONNOR:  We would strike Ms. Magallonperez.

16     She is seated in Seat Number 9.

17          THE COURT:  Okay.  That is okay.  Anyone else?

18          MS. O'CONNOR:  Not from the defense at this time.

19          THE COURT:  We have two defendants first.  Do you

20     have anyone you want to get rid of for sure?

21          MS. KIM:  None.

22          THE COURT:  Okay.

23                    (Sidebar ends.)

24          THE COURT:  Okay.  So we're going to excuse

25     Ms. Magallonperez, and can you to report back to the jury

1     assembly room.

2          Thank you for all of your time and attention today.

3               THE COURTROOM DEPUTY:  Sara Wilkinson.

4     W-i-l-k-i-n-s-o-n.  You are in the second row, whichever way

5     you want to go.

6          Thank you.  Do we have the microphone for Ms. Wilkinson?

7     Thank you.

8               THE COURT:  Good afternoon.

9               PROSPECTIVE JUROR:  Hello.

10              THE COURT:  How are you and the other adults in your

11    household employed?

12              PROSPECTIVE JUROR:  I'm a scientific writer, and my

13    husband is a screenwriter.

14              THE COURT:  Okay.  Have you served on a jury before?

15              PROSPECTIVE JUROR:  I have not.

16              THE COURT:  Do you recall my questions this morning?

17              PROSPECTIVE JUROR:  Uh-huh.

18              THE COURT:  Do you need to bring anything to our

19    attention?

20              PROSPECTIVE JUROR:  My stepbrother was arrested for

21    speeding and resisting arrest.  I'm not sure if he had a trial

22    or not, but he did serve jail time.  It doesn't affect me and

23    won't affect my judgment.

24              THE COURT:  Anything else?  Counsel may I see you at

25    sidebar?

```
 1                         (Sidebar begins.)

 2              THE COURT:  Okay.  Challenges for cause.

 3              MS. O'CONNOR:  No, Your Honor.

 4              MS. KIM:  No, Your Honor.

 5              THE COURT:  Then we're back to the defense.

 6              MS. O'CONNOR:  We would strike Juror Number 10.

 7              THE COURT:  Government, do you have anyone at this

 8    time?

 9              MS. KIM:  No, Your Honor.

10              THE COURT:  Okay.  Thank you.

11                         (Sidebar ends.)

12              THE COURT:  All right.  We're going to thank and

13    excuse Mr. Nakachi.  If you would please report back to the

14    jury assembly room.  Thank you very much for your time and

15    attention today.

16              THE COURTROOM DEPUTY:  Douglas Vegter.

17              THE COURT:  Good afternoon.  Mr. Vegter, can you

18    tell us how you and the other adults in your household are

19    employed?

20              PROSPECTIVE JUROR:  I'm an auto mechanic.  And my

21    wife just stays at home.

22              THE COURT:  Okay.  Have you been on a jury before?

23              PROSPECTIVE JUROR:  No.

24              THE COURT:  That was a no, you shook your head.

25              PROSPECTIVE JUROR:  No.
```

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  Do you recall the questions I asked this
 2    morning?
 3              PROSPECTIVE JUROR:  Yes.
 4              THE COURT:  Is there anything you should bring to
 5    our attention?
 6              PROSPECTIVE JUROR:  No.
 7              THE COURT:  Okay.  Counsel?
 8                      (Sidebar begins.)
 9              THE COURT:  Okay.  Any challenges for cause?
10              MS. KIM:  None from the government.
11              MS. O'CONNOR:  No, Your Honor.
12              THE COURT:  Ms. Kim?  We're back to you.
13              MS. KIM:  The government would want to thank and
14    excuse Juror Number 10, Douglas Vegter.
15              THE COURT:  Mr. Vegter.
16              MS. KIM:  Yes.
17              THE COURT:  Anyone from the government at this point
18    in time -- I mean the defense, I misspoke?
19              MS. O'CONNOR:  One moment, Your Honor.
20         We would excuse Juror Number 12, Ms. Campos.
21              THE COURT:  Do you have anyone else right now or is
22    she the only one?
23         Okay.  Then why don't you return to your seats.
24                      (Sidebar ends.)
25              THE COURT:  Okay.  So we would like to thank and
```

1    excuse Mr. Vegter, and Ms. Campos.  Thank you for your time and

2    attention today.

3         Please report back to the jury assembly room on the first

4    floor.

5              THE COURTROOM DEPUTY:  Elizabeth Lane.  L-a-n-e.

6         Ms. Lane, if you could take a seat in the fourth row from

7    your end on the second -- I mean second row, fourth seat in.

8         Pauline Golit.  G-o-l-i-t.  Ms. Golit, you will have

9    second row, third seat in.  Thank you.

10             THE COURT:  Okay.  Let me begin with you, Ms. Lane.

11   How are you and the other adults in your household employed?

12             PROSPECTIVE JUROR:  I was for many years a studio

13   executive -- movie executive at FOX.  My husband is a

14   screenwriter.

15        I stopped working five years ago or so to be with my

16   daughters, so I'm freelance writing now.

17             THE COURT:  Okay.  Have you served on a jury before?

18             PROSPECTIVE JUROR:  I have not.

19             THE COURT:  Okay.  Do you recall the questions I

20   asked this morning?

21             PROSPECTIVE JUROR:  I do.

22             THE COURT:  Do you need to bring anything to our

23   attention?

24             PROSPECTIVE JUROR:  I have pretty strongly held

25   political beliefs.  I'm sorry, I'm having an allergy thing, I

1    keep thinking I'm going to sneeze -- I apologize -- about, in

2    particular, the Me Too Movement.

3        As an executive in Hollywood, I saw a lot, so when you

4    raised the issue of sexual assault and domestic abuse, I have

5    worked for those causes and marched for them and given them

6    money.

7            THE COURT:  Okay.  I think we need to follow up at

8    sidebar and talk a little bit more about the case.

9        But I understand your concerns, and I appreciate your

10   candor.

11       Let us go -- is there anything else you need to bring to

12   our attention?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  Okay.  Then let's go to Ms. Golit, and

15   if you could tell us how you and the other adults in your

16   household are employed?

17           PROSPECTIVE JUROR:  I work in a hospital as a

18   registered nurse.  My husband works for legal courier service.

19   He works as a process server sometimes.

20           THE COURT:  Okay.  Have you served on a jury before?

21           PROSPECTIVE JUROR:  I was called for jury duty, but

22   I was dismissed that day.

23           THE COURT:  Okay.  You heard my questions this

24   morning about the case and about being a juror.

25       Is there anything you should bring to our attention?

```
 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  Okay.

 3              PROSPECTIVE JUROR:  Working in the hospital, I have

 4   come across victims of sexual abuse, and reading the newspapers

 5   I have heard about Black Lives Matter, which brings about

 6   unfairness from the police system as far as minorities are

 7   concerned.

 8         The Me Too Movement is another issue.

 9         And there was an instance where my husband was driving,

10   the police stopped him, pulled him out of the car, and

11   handcuffed him.  So when he asked them why did you handcuff me,

12   they said, I'm scared of you.

13         And I think it was unfair to handcuff him before, you

14   know, what is happening.

15         I understand the police duties are very dangerous.  They

16   deal with very, very violent criminals, and it's difficult.

17   It's either protect us or their lives could be in danger.

18              THE COURT:  Well, let me ask couple of questions

19   just to save a trip over.

20         I understand you hold those feelings.  From what you know

21   of this case, the officers or the law enforcement people

22   involved are FBI, not state law enforcement or city or county

23   law enforcement, do you think you could be fair and impartial

24   in a case involving federal law enforcement where there is no

25   issue of race?
```

1          PROSPECTIVE JUROR:  True, yes.

2          THE COURT:  And, okay.  The rest I think I want to

3    do at sidebar, so if I could impose upon you, Ms. Golit, and

4    you, Ms. Lane, to come over and see counsel with me, we will

5    have a few follow-up questions.

6                    (Sidebar begins.)

7          THE COURTROOM DEPUTY:  Ms. Lane, you can come

8    through here.  If you need more tissues, there are some here.

9          THE COURT:  Ms. Golit, you can come over, too.

10         THE COURTROOM DEPUTY:  Ms. Golit?

11         THE COURT:  Both.  We will pose the same questions,

12   it's not going to influence anyone.

13      So here is the question:  I think I understand your

14   concern about Black Lives Matter, and yours.

15      But given the circumstances of this case, we're dealing

16   with the FBI.  And we do not have any stops of the moving car

17   or anything based on race.

18      Does that allow you to think you could be fair and

19   impartial?

20         PROSPECTIVE JUROR:  Yes.  (Golit.)

21         THE COURT:  What about you?

22         PROSPECTIVE JUROR:  (Lane)  Without knowing more of

23   the facts of the case on the issue of sexual assault?

24         THE COURT:  We're going to that next.

25      Okay.

1          PROSPECTIVE JUROR:  I don't know.  (Lane.)

2          THE COURT:  This is the case -- I want to try, if I

3    can, to have the lawyers describe the case to you, they are

4    familiar with the evidence -- but basically what we have here

5    is the claim that the defendant extorted the Entertainer we

6    mentioned.

7          The question for the house is that the defendant's

8    position is that his wife, who is a masseuse, gave a nude

9    massage to the Entertainer, that she refused sexual favors, and

10   the Entertainer, whoever was there, engaged in -- was unhappy,

11   and there was an altercation that involved her and involved her

12   husband, the defendant.

13         The question on the table is does that fact pattern cause

14   you to think you could not be fair and impartial?

15         PROSPECTIVE JUROR:  (Lane)  I don't think so.

16         THE COURT:  Okay.  Do you have any follow-up you

17   want to ask her?

18         MS. KIM:  Just to clarify that that allegation is

19   made by the defendant against the Entertainer.

20         THE COURT:  Right.

21         MS. KIM:  The government's contention is that the

22   allegations are false.

23         So the question is whether you can assess the credibility

24   of the witnesses, the evidence presented in light of what you

25   said the Me Too Movement and your feelings about that, you

```
 1   didn't expound, but I wonder how that would play into it.
 2              PROSPECTIVE JUROR:  You mean her testimony?
 3              THE COURT:  She's not testifying, only her husband.
 4              PROSPECTIVE JUROR:  Okay.
 5              THE COURT:  He doesn't have to testify because he's
 6   presumed innocent.
 7              PROSPECTIVE JUROR:  You know, I feel passion about
 8   that.  It's kind of abstract, so it's hard to be sure, but I
 9   think so.
10              THE COURT:  Okay.  Ms. O'Connor, do you have any
11   follow-up?
12              MS. O'CONNOR:  I don't, Your Honor.
13              THE COURT:  Okay.  Ms. Golit, what about you, do you
14   think on that fact pattern you could be fair and impartial
15   notwithstanding your views on Me Too?
16              PROSPECTIVE JUROR:  I'm okay with that.
17              THE COURT:  Anything more?
18              MR. JAUREGUI:  Your Honor, I just -- I'm sorry,
19   Ms. Lane's answer was, "I think so," I'm not sure if that meets
20   the Court's satisfaction as to whether she could be fair and
21   impartial.
22              THE COURT:  I think so, I think you raised a fair
23   point.
24         The real question is not maybe I can be, but do you think
25   you absolutely can be fair and impartial and decide the case
```

**UNITED STATES DISTRICT COURT**

1    based on the evidence notwithstanding your strong feelings

2    about the Me Too Movement?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Okay.  I think that answers it.  Thank

5    you.

6         Counsel, don't go away.  We will have a jury by midnight.

7         Based on that, do we have any challenges for cause?

8              MS. O'CONNOR:  Not from the defense, Your Honor.

9              MR. JAUREGUI:  Can we have a moment?

10             THE COURT:  Sure.

11        We want to know, are there any challenges for cause.

12             MS. KIM:  No, not from the government.

13             MS. O'CONNOR:  I thought that's what we were waiting

14   for, sorry, Judge.

15             THE COURT:  Now, we're back to you defendants.  Do

16   you have a preemptory?

17             MS. O'CONNOR:  We, do, Your Honor.  I apologize, one

18   moment.

19        We would strike Juror Number 6, Mr. Rosenberg.  He's

20   Number 16 on the list, but he's seated in 6.

21             THE COURT:  I understand that, Mr. Rosenberg.

22        Do you have anything else by now?

23             MS. KIM:  May we have a moment?

24             THE COURT:  Sure.

25             MS. KIM:  Your Honor, the government would like to

1  thank and excuse Juror Number 10, Ms. Lane.

2          THE COURT:  Ms. Lane, okay.

3     Defense, do you have anyone else right now?

4          MS. O'CONNOR:  Not right now.

5          THE COURT:  Okay.  Let's go back then.

6                    (Sidebar ends.)

7          THE COURT:  Okay.  And we would like to thank and

8  excuse Mr. Rosenberg and Ms. Lane.

9     Please report back to the jury assembly room.

10    Thank you again for your time and attention.

11         THE COURTROOM DEPUTY:  Paul Gulyas.  G-u-l-y-a-s.

12    Mr. Gulyas, you are going to have a seat in the first row

13 over here, third seat in.

14    Anthony Mayfield.  M-a-y-f-i-e-l-d.

15         THE COURT:  Ms. Gulyas, can you tell us how you and

16 the other adults in your household are employed?

17         PROSPECTIVE JUROR:  I'm a freelance writer for New

18 Media and Visual, and my roommate is a cross-fit instructor and

19 a bartender.

20         THE COURT:  What kind of writing do you write?

21         PROSPECTIVE JUROR:  Mostly scripts for online

22 content for various news outlets or entertainment properties.

23         THE COURT:  Have you served on a jury before?

24         PROSPECTIVE JUROR:  I have not.

25         THE COURT:  Okay.  Do you recall my questions from

1    the morning?

2              PROSPECTIVE JUROR:  I do.

3              THE COURT:  Do you have anything to bring to our

4    attention?

5              PROSPECTIVE JUROR:  I will just say that I have had

6    numerous favorable interactions with law enforcement, as I used

7    to be a crisis counselor at a group home, and they often came

8    into save the day when things got out of hand.

9         Also, I agree with a few of the other jurors who mentioned

10   that law enforcement and the court system may treat different

11   people unfairly or not the same as others.

12             THE COURT:  Okay.  Would you be able to judge a law

13   enforcement officer's testimony by the same standards as all of

14   the other witnesses in the case?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Okay.  Then let's go to Mr. Mayfield.

17   Mr. Mayfield, how are you and the other adults in your

18   household employed?

19             PROSPECTIVE JUROR:  I am the only adult in my

20   household, so I'm a school teacher in Long Beach.

21        I teach fifth grade, and I have been doing that for about

22   20 years now.

23             THE COURT:  Have you been on a jury before?

24             PROSPECTIVE JUROR:  I have never served on a jury,

25   no.

1          THE COURT:  Do you recall the questions I asked this

2   morning?

3          PROSPECTIVE JUROR:  I do.  Can I have a sidebar?

4          THE COURT:  Sure.

5                    (Sidebar begins.)

6          THE COURT:  Okay.  What do you want to tell us?

7          PROSPECTIVE JUROR:  So when I was growing up, my

8   father was schizophrenic, I was around him and he was abusing

9   the law for several years.

10         THE COURT:  When he was growing up, his father was

11  schizophrenic.

12         PROSPECTIVE JUROR:  And I was exposed to a lot of

13  physical abuse to my mom happening to her.

14     So, now talking about the whole movement, I'm very much a

15  champion for women's rights, and they are protected in that

16  regard, so any -- I have trouble watching movies with that

17  happening because it gets me a little riled up.

18         THE COURT:  Got it.  I'm going to tell you about

19  this case, if I can, though, the others will give a better

20  view.

21     The defendant is accused of extorting the Entertainer.

22  What he claims is that his wife, who will not be testifying, is

23  a masseuse who offered the Entertainer the nude massage.  The

24  Entertainer disputes that he says he was never there.

25         PROSPECTIVE JUROR:  She would be nude or he would be

1   nude?

2              THE COURT:  I think everybody would be nude.

3              PROSPECTIVE JUROR:  Okay.  It's a party.

4              THE COURT:  And the claim is that the wife, who will

5    not be testifying who is the masseuse, declined to give those

6    sexual favors.

7         And what next happened was there was a dispute among all

8    of the parties.  This defendant, his wife, the masseuse, and

9    the Entertainer, who denies he was there.

10        So, the question on the table for us is you are going to

11   have to evaluate the credibility of the -- well, the defendant

12   may never take the stand, but you are going to have to evaluate

13   the credibility of the Entertainer and determine, based on what

14   he says, whether there was an extortion.

15        Obviously, there will be other evidence, too.

16        So I'm over summarizing.  I'm over simplifying, but that

17   is what the, quote, sexual assault issue involves in this case.

18              PROSPECTIVE JUROR:  Okay.

19              THE COURT:  So the question to you is, now that

20   said, do you think that would affect your ability to be fair

21   and impartial?

22              PROSPECTIVE JUROR:  I guess not, yeah.

23              THE COURT:  Well, I guess not may not be enough.

24              PROSPECTIVE JUROR:  Sorry, yeah.  It could.  I can't

25   honestly say that it wouldn't, based on my background.

```
 1              THE COURT:  Well, then I think we should excuse you
 2  and send you back to the jury assembly room.  Thank you.
 3              PROSPECTIVE JUROR:  Thank you.
 4              THE COURT:  Okay.
 5              MS. O'CONNOR:  It occurred to me, I don't think we
 6  have asked the new people whether they have had prior jury
 7  service.
 8              THE COURT:  No, I have.  I promise you.
 9              MS. O'CONNOR:  Okay.
10              THE COURT:  The last two were no's, though.  So now
11  we're excluding Mr. Mayfield, so now we need to call someone
12  else up.
13                      (Sidebar ends.)
14              THE COURTROOM DEPUTY:  John Carmouche.
15  C-a-r-m-o-u-c-h-e.
16         Mr. Carmouche, if you could have a seat whichever way you
17  are going -- if you go through the door at the end, you can go
18  to the second row, fourth seat in.
19              PROSPECTIVE JUROR:  Right here?
20              THE COURT:  Yes.
21         Just the empty seat in the second row.
22              THE COURTROOM DEPUTY:  Thank you.  Do we have the
23  microphone?  Thank you.
24              THE COURT:  Good afternoon.
25              PROSPECTIVE JUROR:  Good afternoon.
```

1          THE COURT:  Mr. Carmouche, could you tell us how you

2    and the other adults in your household are employed?

3          PROSPECTIVE JUROR:  I'm the only adult in my

4    household, and I'm retired.

5          THE COURT:  What did you do before you retired?

6          PROSPECTIVE JUROR:  I worked for the federal

7    government.

8          THE COURT:  What did you do for the federal

9    government?

10          PROSPECTIVE JUROR:  I did quality assurance.

11          THE COURT:  Okay.  Now, as you can see, there will

12    be federal agents testifying in this case.

13      Would you be able to evaluate their testimony the same way

14    you would evaluate anyone else's testimony?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.  Have you served on a jury before?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Civil or criminal?

19          PROSPECTIVE JUROR:  Both.

20          THE COURT:  Did the jury reach verdicts in the cases

21    in which you served?

22          PROSPECTIVE JUROR:  Some, they did.

23          THE COURT:  Okay.  And in others, were there hung

24    juries?

25          PROSPECTIVE JUROR:  No.

```
1                THE COURT:  What happened?

2                PROSPECTIVE JUROR:  Maybe you should repeat that.

3                THE COURT:  Well, if they didn't reach a verdict, is

4    it because the case settled, or is it because the jury couldn't

5    agree on a verdict?

6                PROSPECTIVE JUROR:  The jury couldn't agree on the

7    verdict.

8                THE COURT:  Okay.  And my question to you is did you

9    come away from your experiences on the jury with any positive

10   or negative views about jury service?

11               PROSPECTIVE JUROR:  No.

12               THE COURT:  Okay.  Have you had -- has your

13   experience as a juror caused you to believe you would be open

14   to being a juror in this case?

15               PROSPECTIVE JUROR:  I will try to be a fair juror.

16               THE COURT:  Yes.  And you think you could discuss

17   the evidence with your fellow jurors?

18               PROSPECTIVE JUROR:  Yes.

19               THE COURT:  Okay.  Now, you remember my questions

20   from the morning that I asked.

21               PROSPECTIVE JUROR:  Yes.

22               THE COURT:  Do you need to bring anything to our

23   attention?

24               PROSPECTIVE JUROR:  No.

25               THE COURT:  Okay.  Counsel, may I see you at
```

```
 1   sidebar?
 2                        (Sidebar begins.)
 3            THE COURT:  Challenges for cause?
 4            MS. KIM:  Not from the government.
 5            MS. O'CONNOR:  No, Your Honor.
 6            THE COURT:  I think we're back here.
 7            MS. O'CONNOR:  Can the Court tell us how many
 8   strikes we have?
 9            THE COURT:  From my record you have 1, 2, 3, 4, 5,
10   to go, which means you have used five.
11            MS. O'CONNOR:  The government has used?
12            THE COURT:  They have to go 1, 2, so they have used
13   four.
14            MS. O'CONNOR:  It was our turn to strike a juror,
15   Your Honor?
16            THE COURT:  It is.  You are up for the next two.
17            MS. O'CONNOR:  Okay.  We would strike Juror No. 3,
18   Ms. Jovel-Mancilla.
19        We would also strike Juror Number 10, Mr. Carmouche.
20            THE COURT:  Anything from the government, at this
21   time?
22        Okay.  Let's go back to this.
23                        (Sidebar ends.)
24            THE COURT:  So at this juncture, we would like to
25   thank and excuse Ms. Jovel-Mancilla and Mr. Carmouche.
```

1        If you would both go back to the jury assembly room, and

2   before that, I would like to thank you for all of your time and

3   attention today.

4            THE COURTROOM DEPUTY:  Kristopher Payne.  P-a-y-n-e.

5   Kristopher Payne.

6        Mr. Payne, you are going to be in the first row, third

7   seat in from that end.  Leigh Hunter.  H-u-n-t-e-r.  Leigh

8   Hunter.  Thank you.

9            THE COURT:  Okay.  So let me begin with you,

10  Mr. Payne.  Do you have the microphone there?

11           PROSPECTIVE JUROR:  I do.

12           THE COURT:  Okay.  How are you and other adults in

13  your household employed?

14           PROSPECTIVE JUROR:  I work in television production

15  business.  My wife stays at home, formerly working at

16  television production.

17           THE COURT:  She was previously in television

18  production.  What kind of television production do you do?

19           PROSPECTIVE JUROR:  I'm freelance.  Recently I have

20  worked on kids programming.

21           THE COURT:  Okay.  What kind of programming did your

22  wife work on?

23           PROSPECTIVE JUROR:  Reality.

24           THE COURT:  Reality, okay.  Have you served on a

25  jury before?

```
 1                    PROSPECTIVE JUROR:  No.

 2                    THE COURT:  Do you recall my questions this morning

 3      and afternoon?

 4                    PROSPECTIVE JUROR:  I do.

 5                    THE COURT:  Do you need to bring anything to our

 6      attention?

 7                    PROSPECTIVE JUROR:  My brother served six months --

 8      I'm not sure exactly, I think it's DUI-related.

 9          And then my cousin -- first cousin, she's been in and out

10      of the system.  I'm not sure of her situation.

11                    THE COURT:  Okay.  Do you think either of them was

12      treated unfairly?

13                    PROSPECTIVE JUROR:  No.

14                    THE COURT:  Do you think you could be fair and

15      impartial in this case?

16                    PROSPECTIVE JUROR:  Yes.

17                    THE COURT:  Okay.  Let us then go to Ms. Hunter.

18      Good afternoon.

19                    PROSPECTIVE JUROR:  Hi.

20                    THE COURT:  How are you and the other adults in your

21      household employed?

22                    PROSPECTIVE JUROR:  I'm a nurse practitioner, and my

23      spouse works for FEDEX.

24                    THE COURT:  Okay.  Have you served on a jury before?

25                    PROSPECTIVE JUROR:  Yes, I have.
```

```
 1              THE COURT:  Civil or criminal?

 2              PROSPECTIVE JUROR:  Criminal.

 3              THE COURT:  Did the jury reach a verdict?

 4              PROSPECTIVE JUROR:  Yes, they did.

 5              THE COURT:  Were you satisfied with that experience?

 6              PROSPECTIVE JUROR:  Yes, I was.

 7              THE COURT:  Do you remember my questions from this

 8  afternoon?

 9              PROSPECTIVE JUROR:  Yes.  There were many of them.

10  I hope I remember them all.

11      This was 30 years ago, and I had a very close friend that

12  was more like a brother, who did go to prison for nine years.

13              THE COURT:  Do you know why he was sent to prison?

14              PROSPECTIVE JUROR:  For attempted murder.

15              THE COURT:  You were at the trial?

16              PROSPECTIVE JUROR:  I did not go to his trial.

17              THE COURT:  Okay.  Do you have any opinion one way

18  or the other as to whether he was treated fairly?

19              PROSPECTIVE JUROR:  A little bit.  I think he was a

20  little bit -- some caricatures were made by the media of who he

21  was, which I think weren't really true as to who he was.

22      But I don't think it would affect my -- it didn't affect

23  my -- when I was on trial before -- being able to be impartial.

24              THE COURT:  Okay.  The other case you were in was a

25  criminal case?
```

1        PROSPECTIVE JUROR:  It was a murder case also.

2        THE COURT:  Okay.  And you felt you were fair and

3   impartial in that case, and you think you can be fair and

4   impartial in this case?

5        PROSPECTIVE JUROR:  I do.

6        THE COURT:  Counsel, let me see you at sidebar.

7                    (Sidebar begins.)

8        MS. O'CONNOR:  I apologize for that delay.  I was

9   waiting for the government to be coming up.

10       THE COURT:  We just need to move.  But I understand

11  you need to confer with your client.

12      Any challenges for cause?

13       MS. KIM:  Not from the government.

14       MS. O'CONNOR:  No, Your Honor.

15       THE COURT:  Okay.  We're back to preemptories.

16  Government?

17       MS. KIM:  No.

18       THE COURT:  You will take the jury as is?

19       MS. KIM:  Yes, Your Honor.

20       THE COURT:  Okay.  We're back to the defendants.

21       MS. O'CONNOR:  We strike Juror No. 1, Mr. Gleason.

22       THE COURT:  Anyone else right now?

23       MS. O'CONNOR:  Not right now.

24       THE COURT:  Okay.  Does your client need a recess?

25       MS. O'CONNOR:  I will check with him, no.

1          THE COURT:  Good.

2          MR. JAUREGUI:  Your Honor, can we tell Joel Koury

3    that his client can go home today?  He's not going to get to

4    the stand.

5          THE COURT:  I would like to start with the opening

6    statements.  How long do each of you anticipate for that?

7          MR. JAUREGUI:  Ours is just over 20 minutes.

8          THE COURT:  Yours?

9          MS. O'CONNOR:  Fifteen, 20 minutes.

10         THE COURT:  Based on where we are assuming we go to

11   6:00 or 6:30, which I'm prepared to do, if the jury can stay,

12   the best we can do is get through the opening statements, so

13   yes, you could.

14         MR. JAUREGUI:  Wasn't it between 5:30 and 6:00, you

15   are going to release them because of parking or something?

16         THE COURT:  I think I can.  Ms. Jeang has explained

17   to me in the new parking situation there is no limitation, so

18   we could do a Judge Carter, but we are not going to do that.

19         MR. JAUREGUI:  So we can let Mr. Koury know his

20   client isn't going to get to the stand?

21         THE COURT:  9:30 tomorrow.

22      Thank you.

23                    (Sidebar ends.)

24         THE COURT:  Okay.  We're going to thank and excuse

25   Mr. Gleason.

1          Please go back to the jury assembly room.  Thank you for

2     your time and attention.

3               THE COURTROOM DEPUTY:  Gisell Gutierrez.

4     G-u-t-i-e-r-r-e-z.  Gisell Gutierrez.

5               THE COURT:  Good afternoon, Ms. Gutierrez.

6               PROSPECTIVE JUROR:  Hi.

7               THE COURT:  How are you and the other adults in your

8     household employed?

9               PROSPECTIVE JUROR:  I work at Starbucks, and my mom

10    is a self-employed housemaid, and my sister is a phlebotomist

11    at a hospital.

12              THE COURT:  Have you served on a jury before?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  Do you remember my questions from this

15    morning or this afternoon or whenever we started?

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  Is there anything you need to bring to

18    our attention?

19              PROSPECTIVE JUROR:  I had a cousin, he was charged

20    for sexual assault, and he actually went to -- he served time

21    in prison for couple of years.

22              THE COURT:  Okay.  Do you know anything about -- did

23    he plead guilty or?

24              PROSPECTIVE JUROR:  He plead guilty.  Actually, well

25    I haven't talked to him or my family members, but from what I

```
 1    know is that he took the plea of what they gave him, so yeah.
 2              THE COURT:  Do you think he was treated unfairly?
 3              PROSPECTIVE JUROR:  At his side, I heard stories
 4    that he didn't do what he did, so both sides, but yeah, kind
 5    of.
 6              THE COURT:  You don't think he was treated fairly?
 7              PROSPECTIVE JUROR:  No.
 8              THE COURT:  And do you think you could be fair and
 9    impartial in this case, given that fact?
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  Okay.  All right.  Let me see counsel at
12    sidebar.
13                         (Sidebar begins.)
14              THE COURT:  Okay.  Challenges for cause?
15              MS. O'CONNOR:  Yes, Your Honor.  At the very least I
16    would ask that Ms. Gutierrez be questioned further.
17         This case, as everybody knows, involves allegations of
18    sexual assault.
19              THE COURT:  Ms. Gutierrez, could you come over
20    please?
21              MR. JAUREGUI:  Before she gets here, I think the way
22    Your Honor handled it last way was exactly right, which is to
23    say the government charges X and the Entertainer denies.
24              THE COURT:  Okay.  So, we're concerned about this
25    case.  What exactly were the charges that your cousin went to
```

1    jail for?

2              PROSPECTIVE JUROR:  The woman that she was -- they

3    had a relationship, so she filed charges that he sexually

4    abused her, and he -- well, from his side, he said no, from

5    what my family was telling me.

6         So this was couple of years ago.  I know that he served

7    ten years or so, I'm not sure, but yeah.  That is that.

8              THE COURT:  Do you know where he was charged?  When

9    you say ten years?

10             PROSPECTIVE JUROR:  I'm not sure exactly how many

11   years, but it was quite a lot, several.

12             THE COURT:  Were you at the trial?

13             PROSPECTIVE JUROR:  No, I was not.

14             THE COURT:  Do you know any of the facts of the

15   case?

16             PROSPECTIVE JUROR:  Just that from what my older

17   brother had told me.

18             THE COURT:  Okay.  Was your brother close to your

19   cousin?

20             PROSPECTIVE JUROR:  Yes.  They were from my dad's

21   side.  They grew up together.

22             THE COURT:  Okay.  This case -- you have said you

23   can be fair and impartial.

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  So I'm going to tell you what happened

1    here, but I'm going to let the defense ask some questions

2    because they may have some concerns.

3              PROSPECTIVE JUROR:  Okay.

4              THE COURT:  In this case, the defendant is accused

5    of extorting the Entertainer money and asking for money

6    improperly and illegally.

7         The claim is that the defendant's wife was a masseuse who

8    gave nude massages.

9         In the course of the massage, whoever was the client,

10   asked for sexual favors, and she declined to give them.

11        And there developed a dispute, an altercation, a fight

12   broke out between the masseuse, her client, and the defendant.

13        The Entertainer, I mentioned earlier, denies that he ever

14   made arrangements to have a massage with this woman.

15        So, what we have here is a case where there are

16   allegations of sexual assault, although the masseuse, the wife

17   will not be testifying, and the question really is the

18   credibility of the Entertainer.

19             PROSPECTIVE JUROR:  Uh-huh.

20             THE COURT:  So my question to you is knowing that,

21   is that close enough to the case that your cousin experienced

22   that you would have any concern that you couldn't be fair and

23   impartial?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Okay.  I'm going to let defense ask you

 1   some questions.

 2          MS. O'CONNOR:  Ms. Gutierrez, so the government is

 3   going to be alleging that Andy Grammer, the pop star in this

 4   case, was falsely accused of sexual assault.

 5       When you hear that, does that bring to mind your cousin's

 6   experience, and do you think it would be difficult for you to

 7   be fair and impartial in this particular case because of that?

 8          PROSPECTIVE JUROR:  I don't think it's going to

 9   affect me, I feel like every side has its story.

10       My cousin's was different.  It's a whole different

11   situation because he had a relationship with the woman.

12          THE COURT:  From my cousin's side, no, it would not

13   affect me because of every side has its story.

14       So, my cousin has a different story, that relationship was

15   quite complicated from what I know.

16       Okay.  All right.  Thank you, you can go back to the jury

17   box.

18       Okay.  I think based on what she has indicated, there is

19   not a basis for challenging her for cause, but that doesn't

20   mean you can ask for a preemptory.

21          MS. O'CONNOR:  Is it the defense's turn?

22          THE COURT:  It is.

23          MS. O'CONNOR:  We would strike Ms. Gutierrez.  She

24   is in seat No. 1.

25          THE COURT:  Right.  Does the government have anyone

```
 1   to excuse at this point?
 2            MR. JAUREGUI:  Can we have a moment, Your Honor?
 3            THE COURT:  Yes.
 4            MR. JAUREGUI:  Sorry, Your Honor.
 5            THE COURT:  You don't have anyone to strike?
 6       Okay, obviously we're one short.  So then I have got to
 7   fill that seat up.
 8            MS. O'CONNOR:  Do we have an opportunity to
 9   exercise?
10            THE COURT:  You have one more and the government has
11   two more.
12            MS. O'CONNOR:  Understood.
13            THE COURT:  Okay.
14                       (Sidebar ends.)
15            THE COURT:  All right.  We're going to thank and
16   excuse Ms. Gutierrez.
17       Thank you for all of your time today and please report
18   back to the jury assembly room.
19            THE COURTROOM DEPUTY:  Jonathan Junqua.
20   J-u-n-q-u-a.  Jonathan Junqua.
21            THE COURT:  Okay.  Good afternoon.
22            PROSPECTIVE JUROR:  Good afternoon.
23            THE COURT:  Okay.  We know the issues that were
24   raised this morning, so we don't need to review those again.
25       But my question to you is how are you and the other adults
```

```
 1   in your household employed?

 2            PROSPECTIVE JUROR:  So, currently I am unemployed.

 3   But my father was -- is an engineer, and served as vice

 4   president of a corporation.

 5        Then my mother is a stay-at-home mom.

 6            THE COURT:  Okay.  Have you been on a jury before?

 7            PROSPECTIVE JUROR:  No, I have not.

 8            THE COURT:  Do you remember my questions from this

 9   morning?

10            PROSPECTIVE JUROR:  Yes, I do.

11            THE COURT:  Do you need to bring anything to our

12   attention?

13            PROSPECTIVE JUROR:  Yes.  Just my current wife

14   suffered from sexual abuse and rape prior, and it's a very

15   personal issue to me.

16        In terms of just accusations and so on and so forth, that

17   seemed to be the main component of this suit.

18        I feel that obviously it's a complicated situation.  It's

19   hard for me to not let my emotions come into play, but I

20   believe that I could still be fair.

21            THE COURT:  Okay.  All right.  Counsel, let me see

22   you at sidebar.

23                      (Sidebar begins.)

24            THE COURT:  Challenges for cause?

25            MS. O'CONNOR:  Not from the defense.
```

1          MR. JAUREGUI:  No, Your Honor.

2          THE COURT:  Okay.  Then we get to the question of

3    preemptories.  I think we're back to the government.

4          MR. JAUREGUI:  May we have a moment?

5          THE COURT:  Sure.

6          MR. JAUREGUI:  No, Your Honor.

7          MS. O'CONNOR:  We would exercise our -- I think is

8    our final preemptory on Juror 8.

9          THE COURT:  Before I do that, I just want everyone

10   to know that although you have not agreed to excuse Juror

11   No. 1, Mr. Junqua if he were to come back next week and says he

12   absolutely is going to suffer some adverse consequence if we're

13   not done, some adverse consequence in terms of his medical

14   school program, I would be inclined to excuse him, because I

15   think it's -- I personally think it's more important for him to

16   be at orientation than you do.

17      I can't -- he hasn't said that yet, and I'm not going to

18   make that judgment, but if he made a reasonable showing, I

19   would be inclined to let him go and use an alternate.

20      So I just want to be sure that you know that and have full

21   information.

22          MS. KIM:  Your Honor, in light of that, we believe

23   that it would be appropriate to excuse him based on the

24   schedule and a hardship that he would have, rather than have

25   him serve and have to have an alternate take his place after a

 1    week.

 2              MS. O'CONNOR:  We disagree, Your Honor.  That is

 3    what alternate jurors are for.

 4              THE COURT:  I understand.  I will leave him.

 5         You are going to exercise your final preemptory, for what

 6    number?

 7              MS. O'CONNOR:  Seated Juror 8.

 8              MR. JAUREGUI:  At this point, I would like to make a

 9    record, the defense has exercised their preemptories not to

10    include Ms. Magallonperez, Ms. Campos, and now Juror Macias,

11    so --

12              THE COURT:  I understand.  You have made your

13    record.  Do you have a motion you want to make?

14              MR. JAUREGUI:  One moment.

15         After conferring with counsel, no motion.

16              THE COURT:  Okay.  Thank you.

17         Okay.  Let us -- these are going to -- I have got to bring

18    someone else to replace them.

19              MS. O'CONNOR:  Yes.

20                        (Sidebar ends.)

21              THE COURT:  All right.  So at this juncture, we

22    would like to thank and excuse Mr. Macias.

23         Please report back to the jury assembly room and thank you

24    again for your time and attention today.

25              THE COURTROOM DEPUTY:  Garrick Vanderfin.

1    V-a-n-d-e-r-f-i-n.  Garrick Vanderfin.

2              THE COURT:  Okay.  Good afternoon, it's almost good

3    evening, but we're forging ahead.

4         Why don't you tell us how you and the other adults in your

5    household are employed, Mr. Vanderfin?

6              PROSPECTIVE JUROR:  I'm an attorney.  My roommate

7    works in commercial real estate.

8              THE COURT:  Okay.  What area of law do you practice

9    in?

10             PROSPECTIVE JUROR:  I work in civil defense.  I have

11   worked mostly with healthcare liability.

12        My firm also specializes in defense of state and federal

13   law enforcement agencies.

14             THE COURT:  Okay.  When you say defense, is that

15   like in civil rights cases?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Your firm is?

18             PROSPECTIVE JUROR:  Manning and Kass.

19             THE COURT:  Okay.  And so they are on retainer with

20   the County of Los Angeles; is that correct?

21             PROSPECTIVE JUROR:  Correct.

22             THE COURT:  And with the City of Los Angeles?

23             PROSPECTIVE JUROR:  Correct.

24             THE COURT:  County counsel?

25             PROSPECTIVE JUROR:  Yes.  I believe so.

**UNITED STATES DISTRICT COURT**

1           THE COURT:  Any contracts with the federal

2    government that you are aware of?

3           PROSPECTIVE JUROR:  I know there are.  I don't know

4    specifically which ones.

5           THE COURT:  Okay.  Let me discuss this matter with

6    counsel at sidebar.

7                        (Sidebar begins.)

8           THE COURT:  Okay.  I haven't asked him if he's a

9    partner or not a partner, or if he's financially interested.

10   Even though they have no relationship with this case, I do have

11   some questions about his ability to be objective in this trial.

12   Any thoughts?

13          MS. O'CONNOR:  We're in agreement.

14          THE COURT:  Well, that doesn't surprise me.  I want

15   to hear from the government.

16          MS. KIM:  Your Honor, it seems as though Juror

17   Number 8 is not very familiar with the representation by his

18   firm of any of these state or federal law enforcement agencies.

19   The government believes that while limited, it would be

20   warranted that he has not shown any knowledge of, you know, the

21   types of relationships and the contracts they have.

22          THE COURT:  Well, I don't think it's the knowledge,

23   it's the financial interest that concerns me.

24      Let me have him over.

25      Mr. Vanderfin, could you come over, please?

1        Okay.  Are you partner in your firm?

2            PROSPECTIVE JUROR:  No, I'm not.

3            THE COURT:  Just an associate?

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Okay.  I'm most concerned about any sort

6   of federal work your firm does.

7        The question is are you familiar with their having

8   represented the federal government in any sort of way?

9            PROSPECTIVE JUROR:  I don't know, specifically.  I

10  know that we do represent federal law enforcement agencies.  I

11  just don't know the specific ones.

12           THE COURT:  Do you have any idea what kinds of

13  agencies?

14           PROSPECTIVE JUROR:  I'm not sure.

15           THE COURT:  Okay.  Well, let's start at the

16  beginning.  Obviously, although this does not involve state law

17  enforcement officers, we will have FBI agents testifying.

18       Do you believe you could be fair and impartial and treat

19  an FBI agent's testimony the same way you would any other

20  witnesses?

21           PROSPECTIVE JUROR:  Yes, I do.

22           THE COURT:  And if you were part of a jury that

23  returned a verdict of not guilty, in other words, you decided

24  you would not side with law enforcement, do you feel that

25  people in your law firm would hold -- would express concern or

1    criticize you?

2                PROSPECTIVE JUROR:  No, I don't think so.

3                THE COURT:  So you don't think so, meaning?

4                PROSPECTIVE JUROR:  No.

5                THE COURT:  Okay.  If I tell you that during the

6    course of this trial you cannot have any discussion with anyone

7    in your firm regarding the nature of this case, would you be

8    able to follow that instruction?

9                PROSPECTIVE JUROR:  Yes.

10               THE COURT:  And have you, yourself, ever represented

11   law enforcement in any case?

12               PROSPECTIVE JUROR:  Not in any case.  During law

13   school, I interned with a District Attorney's Office in Santa

14   Barbara County.

15               THE COURT:  Okay.

16               PROSPECTIVE JUROR:  But I haven't represented

17   anybody.

18               THE COURT:  All right.  Thank you.

19        Okay.  Well, I don't think there is a basis for challenge

20   for cause based on all of that.

21        So, I think we will not let him go unless since the

22   government has the only preemptory -- unless the government

23   wishes to exercise its preemptory.

24               MS. KIM:  No, Your Honor.

25               THE COURT:  Okay.  Then that will be the jury and we

```
1    will go to alternates next.
2         Thank you.
3                        (Sidebar ends.)
4              THE COURT:  Okay.  Ladies and gentlemen, you are
5    going to be the jury.
6         I'm sorry that we're operating night court, but my medical
7    procedure tomorrow I'm trying to get as much done as I can.  We
8    do need to pick four alternates.
9         Depending on how long that takes, we may try to have
10   opening statements today.
11        On the other hand, we may have to wait until tomorrow.
12   But I will do my best to get through the next stage of this,
13   and so, why don't we call the next four people up.
14        We're going to have four alternates in this case, just to
15   be safe in the event anyone --
16              PROSPECTIVE JUROR:  I was wondering if I could have
17   a quick texts break.  I have a babysitter home with my small
18   children.  I need to let them know that we're going to be
19   delayed.
20              THE COURT:  Absolutely.
21        Is it okay if she steps outside and we continue?
22              PROSPECTIVE JUROR:  My kids are graduating
23   pre-school.
24              THE COURT:  At what time?
25              PROSPECTIVE JUROR:  If I could text my wife, that
```

```
 1    would be great.
 2              THE COURT:  I'm very sorry, I wish we had known.
 3              PROSPECTIVE JUROR:  It's okay.
 4              THE COURT:  Do you have any plans for like a party
 5    or anything for them afterwards?
 6              PROSPECTIVE JUROR:  No.  It's all good, if I could
 7    let her know.
 8              PROSPECTIVE JUROR:  May I use the restroom while I'm
 9    I'm out there texting?
10              THE COURT:  We're going to call four more people and
11    try to forge ahead.
12              THE COURTROOM DEPUTY:  Yes.  I'm sorry.
13              PROSPECTIVE JUROR:  I need to text outside.
14              THE COURTROOM DEPUTY:  Can you speak out?
15              PROSPECTIVE JUROR:  I need to text my husband.
16              THE COURTROOM DEPUTY:  Just let me make sure you are
17    not the next four.
18         Rosalio Martinez.  M-a-r-t-i-n-e-z.  Rosalio Martinez.  If
19    you could sit in the first row, second seat in.
20         Scott Swanson.  S-w-a-n-s-o-n.  Scott Swanson, if you
21    could have a set in the second row.
22              THE COURT:  Could I suggest we have three, so we
23    have them in the same row?
24              THE COURTROOM DEPUTY:  So one and two on the bottom?
25              THE COURT:  Sorry.
```

**UNITED STATES DISTRICT COURT**

1       Scott Swanson is No. 2.

2           THE COURTROOM DEPUTY:  Sharilynne Stark, S-t-a-r-k.

3    Sharilynne Stark.

4       You may go ahead.  The lady in the back who needed to

5    text, go ahead and do so.

6       Lyle Stewart.  S-t-e-w-a-r-t.  Lyle Stewart.

7       Mr. Stewart, last seat.

8           THE COURT:  Okay.  Mr. Martinez, do you have the

9    microphone?  Good evening.

10          PROSPECTIVE JUROR:  Hello.

11          THE COURT:  How are you and the other adults in your

12   household employed?

13          PROSPECTIVE JUROR:  My mother works for the county

14   and my father is a truck driver.

15          THE COURT:  What does your mother do for the county?

16          PROSPECTIVE JUROR:  Human services agency.

17          THE COURT:  What do you do?

18          PROSPECTIVE JUROR:  I'm a student now.

19          THE COURT:  You are an undergraduate?

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Have you been employed?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  What kind of jobs?

24          PROSPECTIVE JUROR:  Restaurant.

25          THE COURT:  Okay.  Have you served on a jury before?

```
 1                  PROSPECTIVE JUROR:  No.
 2                  THE COURT:  Okay.  Do you remember the questions I
 3    asked this morning?
 4                  PROSPECTIVE JUROR:  Yes.
 5                  THE COURT:  Do you need to bring anything to our
 6    attention?
 7                  PROSPECTIVE JUROR:  No.
 8                  THE COURT:  Okay.  Mr. Swanson, same questions for
 9    you.
10                  PROSPECTIVE JUROR:  I'm employed as a police officer
11    with the City of Los Angeles.
12        My little brother is a emergency medical technician, and
13    my other sibling lives with me and is a college student.
14                  THE COURT:  Okay.  Have you served on a jury before?
15                  PROSPECTIVE JUROR:  No.
16                  THE COURT:  Okay.  Do you remember my questions from
17    the morning or the afternoon?
18                  PROSPECTIVE JUROR:  No.
19                  THE COURT:  You have nothing to bring to our
20    attention?
21                  PROSPECTIVE JUROR:  No, I do not.
22                  THE COURT:  Because you are a member of LAPD, I have
23    to ask you, do you believe you are going to be able to evaluate
24    an FBI agent's testimony by the same standards you apply to
25    every other witness in the case?
```

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  Then let's go to Ms. Stark.

3  Ms. Stark, tell us about yourself.

4          PROSPECTIVE JUROR:  So, as of June 3rd -- or

5  June 3rd, I will be the only one employed in my house.

6      I work as a manager in the ice cream shop.  My dad right

7  now is a Farmers insurance agent, but that ends on June 3rd,

8  and my mom is unemployed.

9      I have never served as a juror before.

10         THE COURT:  What did your mother do?

11         PROSPECTIVE JUROR:  She was a home caretaker.

12         THE COURT:  Okay.  And do you remember my questions

13  from this morning?

14         PROSPECTIVE JUROR:  Yes.  The only thing is I was

15  robbed two years ago at gunpoint.

16      I had an issue with the law enforcement.  They refused to

17  listen to me.

18      They instead, went by the cameras, instead of listening to

19  what the person looked like from my viewpoint.  But that was

20  the only issue I had.  Everything else went great.

21         THE COURT:  When you say they refused to listen to

22  your description, there were cameras?

23         PROSPECTIVE JUROR:  Yes, there were cameras.  There

24  were also cameras from 2003, so they were very old.

25         THE COURT:  You were robbed at your place of

1   business?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  So it was the cameras in the business?

4           PROSPECTIVE JUROR:  Yes.

5           THE COURT:  Okay.  And what was your concern that

6   they wouldn't listen to you and they wanted to rely on the

7   cameras?

8           PROSPECTIVE JUROR:  So the person who robbed us was

9   in front of me, and he had mud or dried dirt on his skin to

10  make him look different, if you will, and in the cameras, it

11  just showed him as a darker-skinned male, instead of somebody

12  who was covered in dirt.

13          THE COURT:  I got it.  All right.  Then you heard

14  our questions today?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  And do you have anything to bring to our

17  attention?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  I may have asked you that, but I'm

20  getting a little punchy.

21          PROSPECTIVE JUROR:  That's okay.

22          THE COURT:  Mr. Stewart, how are you and the other

23  adults in your household employed?

24          PROSPECTIVE JUROR:  I'm administrative assistant in

25  the entertainment company, and my wife is stay-at-home graphic

1   designer.

2           THE COURT:  What kind of entertainment company?

3           PROSPECTIVE JUROR:  Walt Disney Company.

4           THE COURT:  Have you served on jury before?

5           PROSPECTIVE JUROR:  Criminal.

6           THE COURT:  Did you reach a verdict?

7           PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Were you satisfied with that experience?

9       Do you recall my questions?  Do you have anything to bring

10  to my attention?

11          PROSPECTIVE JUROR:  I have three close family

12  members in law enforcement.  My grandfather was LA County

13  Sheriff, and she was a retired detective from Long Beach PD,

14  and an uncle who is retired chief of police from -- I can't

15  think of the name of the city, Carlsbad.  That's it.

16          THE COURT:  Okay.  Based on those relationships, do

17  you think that you will be able to follow an instruction that

18  you should evaluate law enforcement officer's testimony in the

19  same manner as anyone else?

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Counsel, let me see you at sidebar if I

22  may.

23                      (Sidebar begins.)

24          THE COURT:  Because the number of alternates on each

25  side I will give two preemptories.  The question is do we have

```
 1    any challenges for cause?
 2              MS. KIM:  Not from the government.
 3              MS. O'CONNOR:  No.
 4              THE COURT:  Preemptories, government?
 5              MS. KIM:  None from government.
 6              THE COURT:  Okay, defense?
 7              MS. O'CONNOR:  Yes.  Mr. Swanson, who is seated in
 8    seat No. 2, Alternate Juror 3.
 9              THE COURT:  It's actually Alternate 2, but I know
10    who you are talking about.
11              MS. O'CONNOR:  Okay.
12         That's all for now.
13              THE COURT:  Okay.
14                        (Sidebar ends.)
15              THE COURT:  We're going to thank and excuse
16    Mr. Swanson, and ask you to report back to the jury assembly
17    room if they are even open at this hour.
18              THE COURTROOM DEPUTY:  They are still there.
19              THE COURT:  Sorry.
20              THE COURTROOM DEPUTY:  Bassam Alfarouh.
21    A-l-f-a-r-o-u-h.  Bassam Alfarouh.
22         If you could have a seat at this end.
23         Do we have the microphone for him?  Thank you.
24              THE COURT:  Mr. Alfarouh.
25              PROSPECTIVE JUROR:  Good evening.
```

```
 1              THE COURT:  How are you and the other adults in your
 2    household employed?
 3              PROSPECTIVE JUROR:  I'm self-employed and my wife
 4    stays home with the kids.
 5              THE COURT:  Okay.  What do you do for a living?
 6              PROSPECTIVE JUROR:  I have four salons.
 7              THE COURT:  I'm sorry?
 8              PROSPECTIVE JUROR:  I have salons.
 9              THE COURT:  Like hair salons?
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  Do you have massage services or just
12    hair services?
13              PROSPECTIVE JUROR:  Just hair and that stuff.
14              THE COURT:  Have you served on a jury before?
15              PROSPECTIVE JUROR:  No.
16              THE COURT:  Do you recall my questions from the
17    morning?
18              PROSPECTIVE JUROR:  Yes.
19              THE COURT:  Is there anything you need to bring to
20    our attention?
21              PROSPECTIVE JUROR:  Yes.  Can I go there?
22              THE COURT:  Yes, of course.  We will see you over
23    here.
24                        (Sidebar begins.)
25              PROSPECTIVE JUROR:  I am nervous.  There is a lot of
```

1    words and I don't understand them.  I get worried about making

2    any decisions not right or something.  I just want to bring

3    that up to you.

4              THE COURT:  Okay.

5              PROSPECTIVE JUROR:  I understand a lot of English

6    but some of them -- some words I don't understand.

7              THE COURT:  Can you give me an area you didn't

8    understand?

9              PROSPECTIVE JUROR:  I mean, when they are talking, I

10   don't know which questions, but when I hear people talking

11   about like what they do, there are some words I don't get

12   exactly the meaning of it.  So that makes me worry.  I don't

13   like that.

14       I mean, I can serve in the jury, I don't mind, but I don't

15   want to make any decision that is wrong or right by me, not

16   understanding the questions.  So I want to say that and

17   clarify.

18             THE COURT:  We're grateful.  But you understand if

19   there were words you didn't understand in the course of the

20   trial, you could send a note out, and assuming it was relevant,

21   and ask us to respond.

22             PROSPECTIVE JUROR:  Yes.  If I can read -- I read

23   and write, but there is a lot of -- I wasn't born here.  I have

24   been here not too long.  There is a lot of words I don't

25   understand, but I don't want to lie in the application.

1      I write English, but there are, of course, some words I

2   cannot understand.  They are, like, too big.  I never heard of

3   them.

4              THE COURT:  What's your native country?

5              PROSPECTIVE JUROR:  Syria.

6              THE COURT:  Did you speak English there before you

7   came here?  So you learned it all here?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Why don't you go back to the jury box

10   for a minute, and I will talk to counsel.

11      What do you want to do?

12              MS. O'CONNOR:  I think that he communicated clearly

13   with the Court's admonition that he seemed to understand, if he

14   didn't understand something he could ask.  I don't see a reason

15   that he should be excused for cause.

16              THE COURT:  Okay.

17              MS. KIM:  We agree.

18              THE COURT:  Okay.  So then the next question is I

19   think we're back to two preemptories, are we not?

20              MS. O'CONNOR:  Yes.

21              THE COURT:  And I believe that as of now it's the

22   government's turn?

23              MS. KIM:  Pass.

24              THE COURT:  Okay.

25              MS. KIM:  Government passes.

```
 1              THE COURT:  Thank you.
 2              MS. O'CONNOR:  We would strike Mr. Stewart, who is
 3   seated in four, the front.
 4              THE COURT:  He was up next.  And just, you know, so
 5   you are clear, the alternates serve in the order they are
 6   seated, which means that Mr. Stark would serve second, and if
 7   he remains, Mr. Alfarouh would be third.
 8                        (Sidebar ends.)
 9              THE COURT:  So we're going to thank and excuse
10   Mr. Stewart, and ask you to report back to the jury assembly
11   room.
12         Thank you, again, for your time and your attention today.
13         And in his place we will call --
14              THE COURTROOM DEPUTY:  Amber Pizano.
15              THE COURT:  Hello.
16              PROSPECTIVE JUROR:  Hello.
17              THE COURT:  How are you and the other adults in your
18   household employed?
19              PROSPECTIVE JUROR:  I'm a certified nursing
20   assistant, and my dad is an engineer, and my mom is a social
21   worker.
22              THE COURT:  Have you served on a jury before?
23              PROSPECTIVE JUROR:  No.
24              THE COURT:  Based on the questions I asked earlier
25   today, is there anything you need to bring to our attention?
```

```
 1              PROSPECTIVE JUROR:  No.

 2              THE COURT:  Counsel, may we see you?

 3                        (Sidebar begins.)

 4              THE COURT:  Do we have challenges for cause?

 5              MS. O'CONNOR:  Not from the defense.

 6              MR. JAUREGUI:  No, Your Honor.

 7              THE COURT:  I think we have only government

 8    preemptories remaining.

 9              MS. KIM:  We pass.

10              THE COURT:  So they will be the alternates.

11         So let's spend one minute on coordination.

12         I probably have to give everyone, like, about ten minutes

13    to run outside and organize themselves.

14         Do you want to do your opening statements today or do you

15    want to wait until tomorrow?

16              MS. O'CONNOR:  We would prefer tomorrow, Your Honor.

17              THE COURT:  I understand why.  I would, too, but I

18    understand that we're -- we have a timeline here.  We won't

19    finish with the Manager tomorrow if we do that, but maybe we

20    wouldn't anyway.

21              MR. JAUREGUI:  I think we may finish with the

22    Manager, it depends on cross.

23              THE COURT:  Well, that may be, but keep in mind now

24    with my new schedule, I have got to be on the road at 12:45.

25              MR. JAUREGUI:  Can we have a moment, Your Honor?
```

```
 1                THE COURT:  Sure.

 2                MS. KIM:  Given the tight schedule, the government

 3    would like to ask the jurors if they would stay a little later

 4    so we could get the opening arguments done today -- the opening

 5    statements done today, and start with witnesses first thing in

 6    the morning tomorrow at 9:30.

 7                THE COURT:  Okay.

 8                MS. O'CONNOR:  If it helps for scheduling purposes,

 9    we do not anticipate that our cross of Mr. Schreier will be

10    long.

11                MS. KIM:  I think we have some juror issues

12    continuing to tomorrow.  If the jurors are available, we will

13    do the opening statements today.

14                THE COURT:  Let me ask this question, and then let's

15    get the people sworn in, and then we will ask the question.

16                          (Sidebar ends.)

17                THE COURT:  All right.  Ladies and gentlemen, you

18    are going to be the jury and the alternates in this case.

19         The first order of business is, as for everyone who we

20    have not called up to today, we are going to excuse you at this

21    time.

22         I am told that you may go home and do whatever

23    verification you have to do from home.  Ms. Jeang, I'm sure,

24    will explain it better than I.

25                THE COURTROOM DEPUTY:  If you need verification for
```

1    your employment or whatnot, you can go online and print out the

2    verification from there that you were present today, and hand

3    that to your employer.

4             THE COURT:  Can they go to the jury assembly room

5    also?

6             THE COURTROOM DEPUTY:  I believe you can, but I

7    think there is only like one kiosk, so there will be a line.

8             PROSPECTIVE JUROR:  Are we supposed to come down

9    tomorrow?

10            THE COURTROOM DEPUTY:  No, you are excused.

11            THE COURT:  So go to the jury assembly room and get

12   your verification.

13       In the meantime, thank you all for your patience and

14   public service.

15            THE COURTROOM DEPUTY:  Can I have all of the jurors

16   in the box please, and raise your right hand.

17       Ladies and gentlemen, do you solemnly swear you will well

18   and truly try the cause now before this Court and a true

19   verdict therein render, according to the evidence, so help you

20   God?

21            JURORS:  I do.

22            THE COURTROOM DEPUTY:  Please be seated.

23            THE COURT:  Okay.  Ladies and gentlemen, let me tell

24   you where we are.

25       We can send you home and have you come back tomorrow, but

1    before you go, I'm going to tell you something about your

2    duties as jurors since many of you haven't served.

3         Counsel will understand either way, but they have inquired

4    whether you would be willing to stay later today to hear their

5    opening statements.

6         I anticipate that it probably, between both sides, it's

7    going to run 35 to 40 minutes.

8         And then we would be in a position of calling our first

9    witness tomorrow.

10        But we all understand that you have family commitments.

11   None of you planned to be here for this time of day.

12        If your last jury experience was in the Superior Court you

13   were out by 4:00 in the afternoon, so I understand that this

14   has all turned into a big surprise for you.

15        So, if you want to confer with one another briefly, we're

16   going to take maybe a five-minute break, so people can go to

17   the bathroom if they need to do that, and then come back and

18   let me know whatever decision you make will be fine with us.

19   Either we will go on today, or otherwise we will come back at

20   9:30 tomorrow morning.

21             THE COURTROOM DEPUTY:  All rise.  Jurors follow me.

22             (JURY EXITS THE COURTROOM AT 5:30 P.M.)

23             MR. JAUREGUI:  Your Honor, can we go on the record

24   for a moment?  If the jury says yes, they want to go tonight,

25   will we just jump right into it?

1          THE COURT:  I'm going to preinstruct and then we

2    will go as fast as possible.

3          MR. JAUREGUI:  I want to confer with the defendants

4    so we can see their slides.

5          THE COURT:  If there is any objection to slides?

6          MR. JAUREGUI:  I think ours will be pretty

7    unobjectionable, but we will see.

8        Is there final ruling on that clip that was tentatively

9    admitted?

10          THE COURT:  If we're talking -- there were two clips

11   tentatively admitted, correct?

12          MR. JAUREGUI:  Yes, you are right.  I'm talking

13   about the one that you said was forward looking.

14          THE COURT:  The forward looking one can come in.

15          MR. JAUREGUI:  Okay.

16          MS. O'CONNOR:  Preserving our objection to that.

17          THE COURT:  Of course.

18          MR. JAUREGUI:  Your Honor, we have met and conferred

19   about the slide, there appears -- there is no objection from

20   the defense to our slides.

21          THE COURT:  Wonderful, and vice versa?

22          MR. JAUREGUI:  I'm told they have no slides.

23          THE COURT:  Thank you.

24        Folks, it's sounding to me like we will not do opening

25   statements today.  It's was a nice try.

1        Do you think -- will they stay long enough for me to

2   quickly preinstruct them?

3            THE COURTROOM DEPUTY:  I think the alternate needs

4   to leave at 6:00.

5            THE COURT:  Just let them go.

6            MR. JAUREGUI:  They have to be obviously instructed

7   not to talk about the case.

8            THE COURT:  We're going to bring them back.

9            MS. O'CONNOR:  Not to do any Google searchs.

10           THE COURT:  We do have to bring them back.

11           THE COURTROOM DEPUTY:  I'm going to bring everybody

12   back in.

13                    (Recess.)

14           THE COURTROOM DEPUTY:  All rise.

15           (JURY ENTERS THE COURTROOM AT 5:38 P.M.)

16           THE COURTROOM DEPUTY:  Please be seated.

17           THE COURT:  Ladies and gentleman, I know you are

18   trying to leave, so I will be quick.

19       Normally, at this point I would preinstruct you, which

20   will take about ten minutes, but I don't think you have that

21   much time based on the parking problems.

22       Am I correct?

23           THE COURTROOM DEPUTY:  Yes.

24           THE COURT:  Let me tell you the two most important

25   things that I will have to say, then I will excuse you for the

1    day.

2         First of all, you may not discuss this case with one

3    another or anyone else or tell anyone anything about the case

4    until after you have reached a verdict or have been discharged.

5         By anyone else, I mean your family, your employers, your

6    friends, anyone you talk to.  You can tell them simply that you

7    are a juror in a case, the judge has instructed you not to

8    discuss the facts of the case until you have been discharged or

9    have reached a verdict.

10        Secondly, that is an instruction I will give you probably

11   every day, because the point being, you have to wait until you

12   hear all of the evidence to begin discussing the case, and that

13   is when you will start your deliberations.  And you should not

14   be discussing the case or anything about anything that has

15   anything to do with the case until you have heard all of the

16   evidence.

17        If anyone tries to contact you or talk to you about the

18   case, please give me a note.  Give it to the courtroom deputy,

19   and I will deal with it either here or in the courtroom or by

20   note.

21        Second, and equally important, we live in an age of the

22   Internet.  You may not use the Internet -- you may not do

23   research.  You may not do anything online or reading books or

24   anything else to fill in the blanks of the case.

25        You have been sworn to take an oath and decide the case

 1    based on the evidence here in this courtroom.

 2         If one of you were to go online or to call friends who are

 3    lawyers or engage in some kind of online communication to learn

 4    facts about this case, it would be violating your oath, and we

 5    would probably have to declare a mistrial and start all over

 6    again.

 7         So for the next few days that you are in this trial,

 8    please do not read any books, do not read any newspaper

 9    articles that bear on the case.  And I don't think there will

10    be any, but if there are, don't read them.

11         Don't let anyone talk to you about these newspaper

12    articles, and please do not do any independent research.

13         It does not help us, even if one of you does research and

14    comes back and shares that information with everyone because

15    you are depriving the defendant of a fair trial.

16         He is entitled to know that you are deciding the case

17    based upon what has been received into evidence in the

18    courtroom.

19         So, I will say that over and over again.  Please keep it

20    in mind, that is your sworn duty.

21         And with that, I'm going to say good night, we will see

22    you at 9:30 in the morning.

23         Thank you very much for your patience.

24              THE COURTROOM DEPUTY:  All rise.

25              (JURY EXITS THE COURTROOM AT 5:46 P.M.)

1          THE COURT:  Anything further for now?

2          MS. KIM:  Just a quick update.  So could I provide a

3     status report the FBI did call those four numbers.

4          One, which is the massage company.  A receptionist

5     answered the phone, and stated that she knows nothing, she is

6     just a receptionist.  She said she would provide the phone

7     number for the agent to the Manager or the owner of the

8     establishment, and promised to give the information over.  That

9     person has not called the FBI back.

10          Two of the individuals declined to be interviewed and the

11     fourth individual, a voicemail message was left for them to

12     call back, and we have not heard back from that person.

13          THE COURT:  Thank you.

14          MS. KIM:  And then --

15          MR. JAUREGUI:  On the two calls that were -- I think

16     the statement was that they were somehow affiliated with

17     backpage.com, Your Honor.  One of those phone numbers ended in

18     8207.

19          An investigator called that number today and received a

20     recorded message that said, the subscriber you have dialed is

21     no longer in service.  If you feel you have received this

22     message in error, please hang up and try again.  Message PA1.

23          The caller tried to dial the number again, and received

24     same error message.

25          There is another phone number ending in 6219.

1      The investigator also called -- called and received a

2  message indicating that the person you have called is not able

3  to receive calls at this time.

4      The caller attempted five more times at 3:01, 3:17, 3:36,

5  4:10, and 4:32 and received the same message every time.

6          THE COURT:  Okay.  Thank you for the update.

7  Anything else?

8          MS. O'CONNOR:  Your Honor, I don't know -- I don't

9  know how the press comes into play in a case like this, but we

10  would ask that any of the witnesses, the Entertainer, the

11  Manager refrain from making statements to the press while the

12  trial is in session.

13          THE COURT:  I would certainly prefer that, but I'm

14  not going to impose a formal gag order.

15      But I do think it would be in the best interest of the

16  government's witnesses to decline to speak during the trial.

17          MS. KIM:  We will relay that message to counsel for

18  the victims.

19          THE COURT:  I understand.  I realize that it is not

20  necessarily your decision, and I understand that counsel for

21  the victims may disagree, but tell her that I would very much

22  appreciate her cooperation.

23          MS. KIM:  Will do, Your Honor.

24          THE COURT:  Thank you.

25      Okay.  I will see you in the morning.

1          THE COURTROOM DEPUTY:  This Court is adjourned.

2          (The proceedings were concluded at 5:49 p.m.)

3                              *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5

6           I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date:  June 13, 2018

17

18

19                     /s/ TERRI A. HOURIGAN

20                _____
                  TERRI A. HOURIGAN, CSR NO. 3838, CCRR
21                    Federal Official Court Reporter

22

23

24

25