UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL    'O'

| Case No. | 2:18-cr-00022-CAS | | Date | May 13, 2019 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | Eddie Jauregui, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Benjamin Koziol | Not | | X | Carlton Gunn | Not | | X |

**Proceedings:**    (IN CHAMBERS) - DEFENDANT'S MOTION FOR BOND PENDING APPEAL (Dkt. 177, filed April 8, 2019)

## I.    INTRODUCTION

On January 19, 2018, a grand jury indicted defendant Benjamin Koziol on one count of attempted extortion affecting interstate commerce by nonviolent threat, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). Dkt. 6. The government alleges that defendant attempted to extort money from Andy Grammer (the "Entertainer"), a popular entertainer, by threatening to sue him for $1 million based on false allegations that the Entertainer physically assaulted defendant and sexually assaulted defendant's wife, Jordan Sweet Koziol ("Sweet"), during a nude massage on January 10, 2016 in Playa Vista, California. The government alleges that it was the Entertainer's manager, Benjamin Singer (the "Manager"), not the Entertainer, who was at the Playa Vista address on January 10, 2016, and that neither Sweet nor defendant was assaulted. Id.; dkt. 73.

After a four-day trial that commenced on May 29, 2018, the jury convicted defendant of attempted extortion in violation of the Hobbs Act. Dkt. 114. Defendant subsequently filed a motion for judgment of acquittal, dkt. 117, which the Court denied, dkt 145 ("Order"). On January 22, 2019, the Court held a sentencing hearing and committed defendant to the Bureau of Prisons for 70 months. Dkt. 163. On January 24, 2019, defendant appealed his conviction to the Ninth Circuit Court of Appeals. Dkt. 165.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL    'O'**

On April 8, 2019, defendant filed a motion for bond pending appeal. Dkt. 177 ("Mot."). The government filed its opposition on April 24, 2019. Dkt. 195 ("Opp'n"). Defendant filed his reply on April 25, 2019. Dkt. 197 ("Reply"). The Court held a hearing on May 6, 2019.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

For a defendant to obtain release on bond pending appeal, the Court must find:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,
(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). Section 3143(b)'s requirement that the appeal "is not for purpose of delay" is a separate requirement from the requirement that the appeal "raises a substantial question" likely to result in reversal or a new trial. See United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985) ("[U]nder the 1984 Bail Act a court must find the following to grant bail pending appeal: (1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."). According to the Ninth Circuit, "the word 'substantial' . . . defines the level of *merit* required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of *question that must be presented*." Id. at 1281 (emphasis in original). "[A] 'substantial question' is one that is 'fairly debatable,' or 'fairly doubtful.' 'In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous.'" Id. at 1283 (quoting United States v. Giancola, 754 F.2d 898, 901 (9th Cir. 1985)).

## III.    DISCUSSION

### A.    Likelihood of Fleeing or Posing a Danger to the Safety of the Community

The government contends that defendant poses a danger to the community because he has a substantial criminal history which includes driving under the influence, pimping and pandering, and violating a domestic abuse protection order. Opp'n at 4. Defendant was also convicted of deprivation of custodial rights and concealment of a minor when he picked up his three-year-old child from daycare and did not return his child to his mother for more than one month. Id. at 4–5. The government also contends that defendant presents a significant risk of non-appearance if he is released because he has no ties to the Central District of California and has a demonstrated history of fleeing and resisting arrest. Id. at 7.

Defendant explains that he faces a four-year sentence in state prison, which is presently lodged against him as a detainer, and that he would be released directly from federal custody to state custody if he were granted bail. Mot. at 3. And if he were to be released from state custody before the Ninth Circuit ruled on his appeal, defendant contends that the government could ask the Court to reconsider and revoke defendant's bond. Reply at 4. According to defendant, this mitigates against any concerns that he might flee or pose a danger to the community.

Due to defendants' criminal history, the Court finds that defendant is likely to pose a danger to the community if he were released from custody. However, this risk is mitigated to the extent he would remain in state custody pending the Ninth Circuit's decision on his appeal. However, even assuming that defendant is not likely to flee or pose a danger to the community, defendant's motion for bail pending appeal must fail because he has not raised substantial questions of law or fact that are likely to result in reversal or a new trial.

### B.    Substantial Questions

"Extortion is defined in the Hobbs Act as 'the obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear, or under color of official right.'" United States v. Villalobos, 748 F.3d 953, 955 (9th Cir. 2014) (citing 18 U.S.C. § 1951(b)(2)) (emphasis in original). In support of the instant motion, defendant argues that the following issues raise "substantial questions" of law: (1) whether extortion, as defined in the Hobbs Act, can apply to a threat of reputational harm; and (2) whether extortion, as defined in the Hobbs Act, can apply to a threat to file a lawsuit. Mot. at 7, 8.

#### i.    Threat of Reputational Harm

Defendant contends that there is a "fairly debatable" issue of whether extortion, as defined in the Hobbs Act, can apply to a threat of reputational harm. In support of his

argument, he cites an unpublished Ninth Circuit opinion, United States v. Brank, 724 Fed. Appx. 527 (9th Cir. 2018), in which the majority of a three-judge panel held that extortion, as defined in the Hobbs Act, includes threats causing fear of injury to reputation. See id. at 529. The dissent argued that "[t]he Hobbs Act was not intended to, and does not, encompass injury, or threatened injury, to reputation." Id. at 530. This dissent alone, according to defendant, is sufficient to establish a "substantial question of law." Mot. at 7. The government resists this conclusion, arguing that, in light of Brank, this issue is no longer novel and has been answered by the Ninth Circuit. Opp'n at 10.

Considering that Brank is an unpublished opinion and does not constitute precedent, see Ninth Cir. Rule 36-3, it appears that defendant may have raised a "fairly debatable" question. However, the Court nonetheless finds that this question is not likely to result in reversal, an order for a new trial, or changes to his sentence. The jury instruction given to the jury in this case stated that the government had to prove, beyond a reasonable doubt, that "the defendant intended to induce [the Entertainer] to part with property by wrongful threat of economic *or* reputational harm." Dkt. 105, Court Instr. 15 (emphasis added). Although defendant contends that Hobbs Act extortion does not apply to threats of reputational harm, it is well-settled that fear of economic harm may support a conviction of extortion under the Hobbs Act. See e.g., United Broth. of Carpenters and Joiners of America v. Building and Const. Trades Dept., AFL-CIO, 770 F.3d 834, 838 (9th Cir. 2014) ("Fear, in the context of the Hobbs Act, can include fear of economic loss."). At trial, the Entertainer testified that he feared that defendant's allegations of sexual misconduct and physical assault, even if baseless, would not only hurt his reputation, but also his livelihood as an entertainer. Dkt. 125, 5/31/2018 Transcript at 77:19–20 ("We're in a heightened period right now where even allegations have serious consequences on entertainers."), 79:24–80:12 ("The problem is that my whole career is autobiographical, all of my songs are autobiographical. So if you call me someone who sexually assaults women, my whole catalog, and everything I have done, my work is a big lie. . . A lot of who I am, and the value I bring [to my work], again, is this person who is relevant and clean."); 81:12–14 (Question: "[D]id you have a concern [the allegations] would impact you financially?" Answer: "Yes. It can definitely impact me financially, a lot."). He stated that if he were accused of sexual assault, companies and sponsors would not want to work with him because they would not want to be associated with someone accused of sexual misconduct, which could result in the loss of substantial income. Id. at 80:22–81:14.

Thus, even if the Ninth Circuit holds that fear of reputational harm alone could not support defendant's conviction, this holding is unlikely to result in reversal or a new trial because the government provided sufficient evidence for the jury to conclude that defendant was guilty of extortion induced by fear of not just reputational harm but also economic harm. And in light of the Entertainer's testimony that his livelihood required him to maintain his reputation, there appears to be no meaningful distinction in this case between reputational harm

and economic harm. Accordingly, defendant has failed to meet his burden of demonstrating that his appeal—with respect to the issue of whether the Hobbs Act applies to threats of reputational harm—raises a "substantial question of law or fact likely to result in" reversal or a new trial. 18 U.S.C. § 3143(b)(1).

### ii.    Threat to File a Lawsuit

Next, defendant contends that there is a substantial question as to whether extortion, as defined in the Hobbs Act, can apply to a threat to file a lawsuit. Mot. at 8. In his motion for judgment of acquittal, defendant argued that his conduct did not fall within the proscriptions of the Hobbs Act because threatened litigation is potentially constitutionally protected under the First Amendment, and because, under the rule of lenity, the Hobbs Act should not be construed to reach the conduct at issue in this case. Dkt. 117 at 8–11. In support of his argument that this issue raises a substantial question of law, defendant cites the Court's statement that this issue would require "some time and attention" in resolving defendant's motion for acquittal, as well as the fact that the Court's order on defendant's motion for acquittal ultimately spanned "13 single-spaced pages." Id. The Court finds defendant's argument unavailing because the length of the Court's order is not a reflection of the merits of defendant's arguments. Moreover, defendant's argument here misses the fact that his threats to file a lawsuit were found to be entirely sham in nature and thus did not merit constitutional protection. See Sosa v. DIRECTTV, Inc., 437 F.3d 923, 932 (9th Cir. 2006) ("[N]either the Petition Clause nor the Noerr-Pennington doctrine protects sham petitions, and statutes need not be construed to permit them."). The Court stated in its order that it "ha[d] no difficulty concluding" that the threatened litigation was "entirely sham in nature and made for an improper purpose" and that the "rule of lenity ha[d] [no] application []." Order at 11, 12. The Court thus finds that the question of whether the Hobbs Act applies to threats of sham litigation is not "fairly debatable" or "fairly doubtful."

Accordingly, defendant has failed to meet his burden of demonstrating that his appeal—with respect to the issue of whether the Hobbs Act applies to threats to file a lawsuit—raises a "substantial question of law or fact likely to result in" reversal or a new trial. 18 U.S.C. § 3143(b)(1).

### C.    Equitable Considerations

Defendant also argues that he should be granted bail pending his appeal because his state detainer is "probably affecting his custody level" and "will also make him serve more time in prison." Mot. at 9. Defendant also argues that, if he were to prevail in his appeal in this case, his time in federal custody is unlikely to be credited to his state sentence. Id. The Court finds that these considerations are irrelevant in determining whether defendant should be granted bail pending appeal under 18 U.S.C. § 3143(b)(1).

## IV.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion for bail pending appeal.

IT IS SO ORDERED.

|  | 00 | : | 00 |
| --- | --- | --- | --- |
| Initials of Deputy Clerk | | CMJ | |